THE PEOPLE OF THE STATE OF NEW YORK ex rel. FRANCIS G. WARD, Appellant, *v.* AUGUSTUS F. SCHEU, Respondent.

1. CONSTITUTIONAL LAW— CONSTITUTION, ART. 10, § 5, NOT APPLICABLE TO STATUTORY OFFICES. The provisions of section 5 of article 10 of the Constitution, that "the Legislature shall provide for filling vacancies in office, and in case of elective officers no person appointed to fill a vacancy shall hold his office by virtue of such appointment longer than the commencement of the political year next succeeding the first annual election after the happening of the vacancy," apply only to such offices as are created or made elective by the Constitution, and not to such as are created and controlled by statute.

2. APPOINTMENT TO FILL VACANCY IN OFFICE OF COMMISSIONER OF PUBLIC WORKS IN THE CITY OF BUFFALO. The office of commissioner of public works in the city of Buffalo is not a constitutional office, but is of statutory origin and under legislative control, and the legislature not having provided for elections to fill vacancies in said office, except at municipal elections which can only be held in November of odd-numbered years, a vacancy in such office, caused by the death of an elected commissioner, is properly filled by an appointment by the mayor, the appointment to continue until the first day of January after the next municipal election.

3. POWER OF LEGISLATURE TO FILL VACANCIES IN ELECTIVE OFFICES. The words "except to fill vacancies" contained in section 3 of article 12 of the Constitution, which provides that "All elections of city officers, * * * *except to fill vacancies,* shall be held on the Tuesday succeeding the first Monday in November in an odd-numbered year, * * *," simply reserves to the legislature the right to fill vacancies in elective offices in even-numbered years and are permissive, not mandatory, and, therefore, not in conflict with section 5 of article 10 of the Constitution.

4. POWER OF LEGISLATURE TO PROVIDE FOR FILLING VACANCY IN OFFICE OF COMMISSIONER OF PUBLIC WORKS IN THE CITY OF BUFFALO. The provisions of section 271 of the charter of the city of Buffalo (L. 1891, ch. 105, amd. L. 1895, ch. 805), that "a vacancy in the office of an elected commissioner" of public works "shall be filled by appointment by the mayor, until the first day of January, after the next municipal election, at which election a commissioner shall be elected to fill the unexpired term of the elected commissioner whose office became vacant," are not in contravention of the Constitution in limiting the right to hold an election to fill such a vacancy to an odd-numbered year, since the office being statutory, the term, compensation, mode of appointment or election, and the time and manner of filling vacancies are all subject to the legislative will.

5. COMMISSIONER MUST BE ELECTED AT MUNICIPAL ELECTION. The expressions "annual election" and "municipal election" as used in said

1901.]     People ex rel. Ward *v.* Scheu.     **293**

N. Y. Rep.]         Statement of case.

charter are not synonymous, and do not justify a claim that a commissioner of public works may be legally elected at a general election held in an even-numbered year.

*People ex rel. Ward* v. *Scheu,* 60 App. Div. 592, affirmed.

(Argued May 10, 1901; decided June 4, 1901.)

Appeal from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered April 6, 1901, reversing a judgment in favor of plaintiff entered upon a verdict directed by the court in an action of quo warranto.

The facts, so far as material, are stated in the opinion.

*Tracy C. Becker* and *Simon Fleischmann* for appellant. Under the charter of the city of Buffalo the term of office of defendant under his appointment by the mayor to fill a vacancy expired December 31, 1900, and the term of office of relator began January 1, 1901. (L. 1891, ch. 105 ; L. 1895, ch. 805 ; Const. art. 12, § 3 ; *Petterson* v. *Welles,* 1 App. Div. 8 ; *People ex rel.* v. *Board Suprs.,* 42 App. Div. 510 ; 160 N. Y. 687 ; *People ex rel.* v. *Fitchie,* 76 Hun, 80.) If the charter should be held to provide that the appointee to fill a vacancy in the office of the elective commissioner of public works should hold until the end of the next odd-numbered year, where the vacancy occurred prior to an election in an even-numbered year, such provision would be unconstitutional under the Constitution of 1895. (Const. art. 10, § 5 ; *People ex rel.* v. *Board Suprs.,* 42 App. Div. 510 ; 160 N. Y. 687 ; *People ex rel.* v. *Board Suprs.,* 139 N. Y. 524 ; Story on Const. § 408 ; Cooley on Const. Lim. 67 ; *People ex rel.* v. *Brundage,* 78 N. Y. 403 ; *People ex rel.* v. *Fitchie,* 76 Hun, 80 ; *People ex rel.* v. *Bull,* 46 N. Y. 57 ; *Rathbone* v. *Wirth,* 150 N. Y. 487 ; *People ex rel.* v. *Palmer,* 154 N. Y. 139.)

*W. H. Cuddeback* for respondent. Section 5 of article 10 of the Constitution, providing for the filling of vacancies in elective offices, applies only to offices made elective by the Constitution and not to those created by act of the legislature.

(*People ex rel.* v. *Comstock*, 78 N. Y. 356 ; *Matter of Schultes*, 33 App. Div. 524 ; *People ex rel.* v. *Dempsey*, 19 Hun, 322.)

WERNER, J. The charter of the city of Buffalo provides for a department of public works of which the board of public works shall be the head. This board consists of three commissioners of public works, one of whom is to be elected by the electors and the other two of whom are to be appointed by the mayor. Under section 271 of said charter "a vacancy in the office of an elected commissioner shall be filled by appointment by the mayor, until the first day of January, after the next municipal election, at which election a commissioner shall be elected to fill the unexpired term of the elected commissioner whose office became vacant." By section 370 of said charter it is provided that "the *municipal* and ward elections shall be held on the Tuesday succeeding the first Monday of November in each *odd* numbered year." Under these charter provisions a municipal election was held in the city of Buffalo in November, 1897, at which Martin Maher was elected to the office of commissioner of public works for the full term of four years, or until December 31st, 1901. Maher died in August, 1900, leaving a vacancy in the office. On September 24th, 1900, the mayor appointed the defendant Scheu to the office made vacant by the death of Maher, the appointment to take effect at once "and to continue until the first day of January after the municipal election, to wit: until January 1st, 1902." At the general election held on the 6th of November, 1900, candidates for three municipal offices were voted for to fill vacancies. Among them was the relator Ward who had been nominated by the Republican party for the office of elective commissioner of public works, to fill the vacancy caused by the death of Maher. The Democratic party, proceeding upon the theory that Scheu had been appointed for Maher's full term, that is, until January 1st, 1902, made no nominations for that office, and Ward having received nearly all the votes cast for said office at said election, he was declared elected. After the election Ward took

1901.]        People ex rel. Ward v. Scheu.        295

N. Y. Rep.]        Opinion of the Court, per Werner, J.

the oath of office, filed his official bond and then demanded
possession of the office to which he claimed to have been
elected. Scheu refused to surrender the office, and this action
was brought. At the trial the relator was successful. Upon
appeal the Appellate Division reversed the judgment of the
trial court and held defendant's appointment good for the whole
of the year 1901. If the case were controlled entirely by the
charter provisions above referred to there could be no doubt that
the defendant was legally appointed, and that his appointment
holds good until January 1st, 1902. Section 271 of the charter
plainly specifies that an appointment to fill a vacancy in the office
of an elective commissioner of public works shall continue
until the first day of January after the next municipal election,
and section 370 of the charter fixes the time for municipal elec-
tions in November of each odd numbered year. Defendant
was appointed in September, 1900, and according to the charter
the next municipal election is to be held in November, 1901.
It is, therefore, plain to a demonstration that if these sections
of the charter are not in conflict with some other controlling
provision of law the defendant was legally appointed for a
term which does not expire until December 31st, 1901. The
relator contends that these sections of the charter must be
read in connection with sec. 5, art. 10, and sec. 3, art. 12, of
the State Constitution, and when so read their language must
either be so construed as to conform to the Constitution or, if
that is impossible, be held unconstitutional. This broad
proposition is beyond dispute. The difficulty in this case lies
in the relator's attempt to apply it to his reading and con-
struction of the Constitution. Section 5, article 10 of the
Constitution says " the legislature shall provide for filling
vacancies in office, and in case of elective officers, no person
appointed to fill a vacancy shall hold his office by virtue of
such appointment longer than the commencement of the
political year next succeeding the first annual election after
the happening of the vacancy." The relator contends that
under this provision of the Constitution the defendant could
not be appointed for a period which should extend beyond the

first day of January, 1901, that being "the beginning of the political year next succeeding the first annual election after the happening of the vacancy." This provision of the Constitution was taken without change from the Constitution of 1846. It was before this court for construction in *People ex rel. Hatfield* v. *Comstock* (78 N. Y. 356), and was there held to apply only to constitutional offices as distinguished from those created by the legislature; that is, to such offices as are created or made elective by the Constitution and not to such as are created and controlled by statute. This judicial construction of the Constitution was not lost sight of by the legislature in 1892 when the "Public Officers Law" (Chap. 681, L. 1892) and the "General Election Law" (Chap. 680, L. 1892) were enacted. The first of these (Sec. 27) declares "the term of an officer appointed to fill 'a vacancy in an elective office, shall be until the commencement of the political year next succeeding the first annual election after the happening of the vacancy, *if the office be made elective by the constitution, or at which the vacancy can be filled by election, if the office be otherwise made elective.*" The other (Sec. 4) provides that "A vacancy occurring before October 15th in any year, in an office authorized to be filled at a general election, shall be filled at the general election held next thereafter, *unless otherwise provided by the constitution,* or unless previously filled at a special election, or unless a special election therefor shall have been ordered to be held on or after such 15th of October and before such general election." This practical legislative construction of the Constitution, although not controlling, is significant because it emphasizes what was made clear in the *Hatfield* case. If we were to discontinue our discussion of the case at this point it would appear, (1) that the office of the elective commissioner of public works is not a constitutional office; (2) that sec. 5, article 10 of the Constitution has no application to that office; (3) that said office is of statutory origin and under legislative control; (4) that the legislature has not provided for elections to fill vacancies in said office except in municipal

elections; (5) that municipal elections can only be held in
November of odd years.   The logical deduction from all
of these facts would necessarily be that the relator has
no claim to the office in dispute.   But the relator points
to a section of the Constitution of. 1895 which was not
in the Constitution of 1846, and says that it not only
controls the provisions of the charter above referred to,
but invests section 5 of article 10 of the Constitution with
a new meaning which it did not have when standing alone,
and, therefore, the decision in the *Hatfield* case, which was
rendered in 1879, is no longer good law.   The new constitu-
tional provision referred to is section 3, article 12, and reads
as follows:   "All elections of city officers, including super-
visors and judicial officers of inferior local courts, elected in
any city or part of a city, and of county officers elected in the
counties of New York and Kings, and in all counties whose
boundaries are the same as those of a city, *except to fill
vacancies*, shall be held on the Tuesday succeeding the first
Monday in November in an odd numbered year, and the term
of every such officer shall expire at the end of an odd num-
bered year."   It is argued for the relator that the words
"*except to fill vacancies*" in the foregoing section are manda-
tory and not permissive; that they relate to all municipal
officers and, therefore, control this case; that they must be read
in connection with the language of section 5 of article 10
of the Constitution which limits the term of an appointee to
an elective office to the first of January next succeeding the
first annual election after such appointment; and that when
these two sections of the Constitution are thus read together
it must follow, (1) that section 5, article 10 of the Constitu-
tion has a broader meaning in the new Constitution than it
had in the old and that its language now includes such offices
as are not created or made elective by the Constitution; (2) that
the provisions of the charter requiring elections to fill vacancies
in such offices to be held in odd numbered years are unconsti-
tutional; or (3) that the word "municipal" whenever it is used
in the charter with reference to elections to fill such vacancies

38

must be construed to be synonymous with the word "annual" as used in said section 5 of article 10 of the Constitution. This ingenious argument has been presented with great ability, but it cannot survive the test of analysis. In the first place, the words " *except to fill vacancies* " in section 3 of article 12 of the Constitution are not mandatory. They are merely permissive and simply reserve to the legislature the right to fill vacancies in elective offices in even numbered years. When so construed they are in perfect harmony with the provisions of section 5 of article 10 of the Constitution. The fair meaning of these words is indicated not only by the context of the paragraph in which they appear, but by the presumption that the framers of the Constitution of 1895 would not have imported into that instrument any part of the old Constitution in conflict with it. Following the example of the legislature as evinced in the Laws of 1892 above referred to, the framers of the new Constitution gave to said section 5 of article 10 the same construction which had been given to it by this court in 1879, and that was that said provision applied only to constitutional offices. These circumstances stamp the words " *except to fill vacancies* " (in section 3, article 12) with a character and meaning which no amount of argument can change or disguise. The logical corollary of the foregoing statement is that the language of section 5 of article 10 has no different or broader meaning in the new Constitution than it had in the old Constitution when it was construed by this court in 1879 in the *Hatfield* case. Counsel for the relator seeks to supplant these deductions by the contention that if the words " *except to fill vacancies* " in section 3 of article 12 of the Constitution are merely permissive and not mandatory, then the charter is unconstitutional in so far as it limits the right to hold elections to fill vacancies in elective municipal offices, to odd numbered years. The case of *People ex rel. Howard* v. *Bd. of Supervisors of Erie County* (42 App. Div. 510; affirmed in this court, 160 N. Y. 687) is cited in support of this contention. In that case the relator Howard claimed to have been elected to

1901.]          People ex rel. Ward *v.* Scheu.          **299**

N. Y. Rep.]      Opinion of the Court, per Werner, J.

the office of supervisor at the general election of 1898 to succeed one Cleveland, who had been elected by the common council to fill a vacancy caused by the death of one Tilson, who had been elected in 1897 for two years. Cleveland claimed to hold over to the end of the term for which Tilson had been elected. Howard claimed to have been regularly elected in the general election of 1898, which was the " first annual election after the happening of the vacancy." A glance at the opinion in that case will suffice to show that it was decided upon the very principles which we have been trying to elucidate in the foregoing pages of this opinion. The office of supervisor in a city is a constitutional office, although the method of election is left to the legislature and, as such, comes within the provision of section 5 of article 10 of the Constitution and of the decision in the *Hatfield* case. In the *Howard* case, by the explicit language of the Constitution, the relator was entitled to election in an even numbered year, because the appointee to fill the vacancy could hold the office only until the next first of January. The office of commissioner of public works in the city of Buffalo, both appointive and elective, is a statutory office. It is created by the charter, which is the act of the legislature. The power which creates an office can regulate the incidents to its creation and existence. The term, compensation, mode of appointment or election, and the time and manner of filling vacancies are all subject to the legislative will. Thus, it will be seen that there is nothing in the *Howard* case that conflicts with the provisions of the charter applicable to statutory or legislative offices. The essential difference between the *Howard* case and the case at bar is that in the former the office in dispute was of constitutional creation and in the latter it is of statutory origin. We have, therefore, been able to discover no ground for holding that the sections of the charter which relate to the election of a commissioner of public works after a vacancy therein has been filled by appointment are in contravention of the Constitution. It is further urged that the expressions " annual election " and " municipal

election " whenever used in this charter are interchangeable, and justify the relator's contention that his election in 1900 was valid. A few references to the charter will disclose the unsoundness of this position. Prior to 1895, section 370 of the charter provided that " The *annual* city and ward election shall be held on the same day with the general state election," and section 271 was as follows: " A vacancy in the office of an elected commissioner shall be filled by appointment by the mayor, until the first Monday of January, after the next *annual* election, at which election a commissioner shall be elected to fill the unexpired term of the elected commissioner whose office became vacant." In 1895 the charter was amended to conform to the new Constitution, and the word " *annual* " in these sections was changed to " *municipal* " in the amended sections.. Other sections of the charter were similarly amended, and the only instance in which the expression " *annual* " seems to have been retained is found in the section relating to the election of councilmen. This was obviously a mere inadvertence, as the " *annual* " election therein referred to is directed to be " held in each odd numbered year " after 1895; an inadvertence easily explained by the use of the qualifying words which deprive the word " *annual*," as there used, of any special significance. We have not attempted to answer in detail every phase of the argument made for the relator, but have endeavored to confine our discussion to the salient and controlling features of the case. Having disposed of these, our conclusions may be briefly recapitulated as follows: 1. The provisions of section 5 of article 10 of the Constitution apply only to constitutional offices. 2. The office of commissioner of public works in the city of Buffalo is not a constitutional one. 3. The provisions of section 3, article 12 of the Constitution are permissive, not mandatory, and, therefore, not in conflict with section 5, article 10 of the Constitution. 4. The provisions of the charter relating to the filling of a vacancy in the office of an elected commissioner of public works do not contravene the Constitution. 5. The words " *annual* " and " municipal " as used in the charter are not

synonymous, and do not justify relator's claim that he was legally elected to said office.

These conclusions require an affirmance of the order of the Appellate Division, with costs to the defendant, and it is so ordered.

PARKER, Ch. J., GRAY, BARTLETT, HAIGHT, MARTIN and VANN, JJ., concur.

Order affirmed.