(163 App. Div. 219)

### PEOPLE ex rel. SNYDER v. HYLAN et al.

(Supreme Court, Appellate Division, Second Department. June 12, 1914.)

1. CONSTITUTIONAL LAW (§§ 15, 18*)—CONSTRUCTION OF CONSTITUTIONAL PRO-VISIONS—INSTRUMENT AS A WHOLE—AMENDMENTS.

All of the provisions of the Constitution relative to a matter are to be read together, but the provisions of an amendment, if in conflict with prior provisions, are controlling as the last expression of the people.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 9, 13, 17; Dec. Dig. §§ 15, 18.*]

2. CONSTITUTIONAL LAW (§ 12*)—CONSTRUCTION OF CONSTITUTIONAL PROVI-SIONS—MEANING OF LANGUAGE.

When the purpose of the people in a constitutional provision is clearly evidenced by plain words, precisely arranged, that purpose must be giv-en effect, and no necessity exists for construction.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 9; Dec. Dig. § 12.*]

3. JUDGES (§ 2*)—CREATION OF OFFICE—CONSTRUCTION OF CONSTITUTION—"SHALL BE."

The offices of the two additional county judges in Kings county, under the amendment of Const. art. 6, § 14, approved at the November, 1913, election, providing that there "shall be" four instead of two such judges, came into existence on January 1, 1914, on which date the amendment became a part of the Constitution under the express terms of article 14, § 1, the words "shall be" not necessarily importing futurity, but being used to express a mandate, and, no other time being specified, the offices sprang into existence when the law took effect.

[Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 2, 3; Dec. Dig. § 2.*]

4. JUDGES (§ 3*)—APPOINTMENT OR ELECTION—CONSTRUCTION OF CONSTITU-TION.

Under Const. art. 6, § 14, as amended by the amendment approved at the November, 1913, election, providing that the two additional county judges for Kings county provided for in the amendment shall be chosen at the general election in the first odd-numbered year after its adoption, such judges are to be elected at the general election in 1915, and the Governor cannot appoint judges to serve until then under sections 4 and 15, authorizing him to fill vacancies until the next general election, since, the manner of selecting the additional judges having been prescribed, such prescription is exclusive.

[Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 4–10; Dec. Dig. § 3.*]

Jenks, P. J., dissenting in part.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Kings County.

Action by the People, on complaint of William H. Snyder, against John F. Hylan and another, to oust defendants from the office of county judge. From a judgment of ouster and an order denying a new trial, defendants appeal. Affirmed.

Argued before JENKS, P. J., and CARR, RICH, STAPLETON, and PUTNAM, JJ.

Charles J. McDermott, of New York City (Clarence U. Carruth and Henry C. Turner, both of New York City, on the brief), for appellants.

Hugo Hirsh, of Brooklyn (Elon R. Brown, of Watertown, and Harry E. Lewis, of Brooklyn, on the brief), for respondent.

STAPLETON, J. The appeal is from a judgment ousting and excluding the defendants from the office of county judge of Kings county, and from an order denying defendants' motion to set aside the verdict and for a new trial. The judgment was entered upon the verdict of a jury, directed by the court, in an action maintained by the Attorney General upon the complaint of a private person against the defendants, who, the complaint alleged, unlawfully held and exercised the office of county judge.

There is no question of fact involved.

It is conceded that on March 27, 1914, the Governor intended and attempted to appoint each of the defendants to the office of county judge of Kings county, and that the defendants intended and attempted fully to qualify for the office.

The only question for decision is: Did the Governor have the power he intended and attempted to exercise? The answer must be found in a correct reading of the Constitution. The pertinent provisions of that instrument are:

Article 6, § 14: "The existing county courts are continued, and the judges thereof now in office shall hold their offices until the expiration of their respective terms. In the county of Kings there shall be four county judges. * * * The additional county judges in the county of Kings shall be chosen at the general election held in the first odd-numbered year after the adoption of this amendment. * * *"

This section, as it is reproduced, was amended by the approval and ratification of the people at the general election held on November 4, 1913, and became a part of the Constitution on January 1, 1914. Article 14, § 1, Constitution of the State of New York. See concurrent resolution of the Senate and Assembly, Session Laws 1913, p. 2227.

Article 6, § 15. * * * "Vacancies occurring in the office of county judge * * * shall be filled in the same manner as like vacancies occurring in the Supreme Court."

Article 6, § 4: "The official terms of the Justices of the Supreme Court shall be fourteen years from and including the first day of January next after their election. When a vacancy shall occur otherwise than by expiration of term in the office of Justice of the Supreme Court the same shall be filled for a full term, at the next general election, happening not less than three months after such vacancy occurs; and, until the vacancy shall be so filled, the Governor by and with the advice and consent of the Senate, if the Senate shall be in session, or if not in session the Governor, may fill such

vacancy by appointment, which shall continue until and including the last day of December next after the election at which the vacancy shall be filled."

[1, 2] We must read all these provisions together. If the amendment is in conflict with prior provisions, its provisions must control as the last expression of the people. People ex rel. W. E. & C. Co. v. Metz, 193 N. Y. 148, 85 N. E. 1070, 24 L. R. A. (N. S.) 201. When the purpose of the people is clearly evidenced by plain words, precisely arranged, that purpose must be given effect. Then no necessity exists for the exercise of the function of construction, and a resort to the rules of construction is needless. Newell v. People, 7 N. Y. 8, 83. In Lake County v. Rollins, 130 U. S. 662, 670, 9 Sup. Ct. 651, 652 (32 L. Ed. 1060), the court said:

"Why not assume that the framers of the Constitution, and the people who voted it into existence, meant exactly what it says? At the first glance, its reading produces no impression of doubt as to the meaning. It seems all sufficiently plain; and in such case there is a well-settled rule which we must observe. The object of construction, applied to a Constitution, is to give effect to the intent of its framers, and of the people in adopting it. This intent is to be found in the instrument itself; and, when the text of a constitutional provision is not ambiguous, the courts, in giving construction thereto, are not at liberty to search for its meaning beyond the instrument.

"To get at the thought or meaning expressed in a statute, a contract, or a Constitution, the first resort, in all cases, is to the natural signification of the words, in the order of grammatical arrangement in which the framers of the instrument have placed them. If the words convey a definite meaning which involves no absurdity, nor any contradiction of other parts of the instrument, then that meaning, apparent on the face of the instrument, must be accepted, and neither the courts nor the Legislature have the right to add to it or take from it. Newell v. People, 7 N. Y. 9, 97; Hills v. Chicago, 60 Ill. 86; Denn v. Reid, 10 Pet. 524 [9 L. Ed. 519]; Leonard v. Wiseman, 31 Md. 201, 204; People v. Potter, 47 N. Y. 375; Cooley, Const. Lim. 57; Story on Const. § 400; Beardstown v. Virginia, 76 Ill. 34. So, also, where a law is expressed in plain and unambiguous terms, whether those terms are general or limited, the Legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction. United States v. Fisher, 2 Cranch, 358, 399 [2 L. Ed. 304]; Doggett v. Florida Railroad, 99 U. S. 72 [25 L. Ed. 301].

"There is even stronger reason for adhering to this rule in the case of a constitution than in that of a statute, since the latter is passed by a deliberative body of small numbers, a large proportion of whose members are more or less conversant with the niceties of construction and discrimination and fuller opportunity exists for attention and revision of such a character, while constitutions, although framed by conventions, are yet created by the votes of the entire body of electors in a state, the most of whom are little disposed, even if they were able, to engage in such refinements. The simplest and most obvious interpretation of a constitution, if in itself sensible, is the most likely to be that meant by the people in its adoption.

"Such considerations give weight to that line of remark of which People v. Purdy, 2 Hill [N. Y.] 31, 36, affords an example. There, Bronson, J., commenting upon the danger of departing from the import and meaning of the language used to express the intent, and hunting after probable meanings not clearly embraced in that language, says: 'In this way * * * the Constitution is made to mean one thing by one man and something else by another, until in the end it is in danger of being rendered a mere dead letter, and that, too, where the language is so plain and explicit that it is impossible to make it mean more than one thing, unless we lose sight of the instrument itself and roam at large in the boundless fields of speculation.'

"Words are the common signs that mankind make use of to declare their

148 N.Y.S.—19

intention to one another; and when the words of a man express his meaning plainly, distinctly and perfectly, we have no occasion to have recourse to any other means of interpretation."

[3] It is provided in article 6, § 14, that "In the county of Kings there shall be four county judges." Two new offices of county judges were thereby created by an amendment which became a part of the Constitution on and after the 1st day of January, 1914. The words "shall be" do not necessarily import futurity. When used as they are in this context, they express a mandate, they record a fiat, that a thing shall exist. The time when it shall spring into existence, unless the time is otherwise specially prescribed, is the time when the law containing the fiat legally takes effect. The result of the acceptance of the plain words of the statute, in their natural, ordinary, and simple import, is that the offices of the two additional county judges were created on January 1, 1914.

[4] A further and essential inquiry is: By what method and at what time are the officers to fill those offices to be chosen? The search for the answer leads naturally to the Constitution itself, to ascertain whether it makes provision. If it does, the search ends. If the Constitution prescribes, the prescription is exclusive. Expressio unius exclusio alterius. The Constitution says:

"The additional county judges in the county of Kings shall be chosen at the general election held in the first odd-numbered year after the adoption of this amendment."

This means the general election in 1915; the amendment having been adopted at the general election in 1913 and having become a part of the Constitution on January 1, 1914.

This is the only provision regulating the time and method of choosing the additional county judges in Kings county. It does not mean that the additional county judges in Kings county shall first be appointed by the Governor and that their successors shall be chosen by the method and at the time expressly prescribed. Speaking of a legislative creation, the Court of Appeals (People ex rel. Ward v. Scheu, 167 N. Y. 292, 299, 60 N. E. 650, 653) said:

"The power which creates an office can regulate the incidents to its creation and existence. The term, compensation, mode of appointment or election, and the time and the manner of filling vacancies are subject to the legislative will."

Judge Cooley, in his work on Constitutional Limitations (6th Ed.) pp. 93, 94, says:

"If directions are given respecting the times or modes of proceeding in which a power should be exercised, there is at least a strong presumption that the people designed it should be exercised in that time and mode only; and we impute to the people a want of due appreciation of the purpose and proper province of, such an instrument when we infer that such directions are given to any other end; especially when, as has been already said, it is but fair to presume that the people, in their Constitution, have expressed themselves in careful and measured terms, corresponding with the immense importance of the powers delegated, and with a view to leave as little as possible to implication."

See State ex rel. Thompson v. Winnett, 78 Neb. 379, 110 N. W. 1113, 10 L. R. A. (N. S.) 149, 155, 15 Ann. Cas. 781.

Notwithstanding the brief time at our disposal, we have read with interest and examined with care the large number of judicial decisions which the industry of counsel collected for our guidance. It is impracticable to discuss them in detail in this opinion. The conclusions in them are based upon peculiar constitutional and statutory provisions or upon well-established principles of law applicable to vacancies in public office and to the filling of those vacancies where there is no constitutional restriction. None of them is an authority for the proposition that when the people create an office by the organic law, and expressly prescribe the method by which and the time at which that newly created office shall be filled, it may be filled by any other method or at any other time. There is no limitation upon the power of the people to create an office, to postpone the filling of it to a future time, and to provide for the filling of it by a special method.

The power of the Executive of this state to fill vacancies in the office of county judge is expressly conferred by the Constitution, and the term for which he may appoint is definitely limited by the Constitution. The exercise of the power is not adaptable to the state of facts presented in this controversy.

When we read the constitutional provisions hereinbefore quoted, the defendants' position presents this incongruity: The people declare the additional county judges in the county of Kings shall be chosen at the general election held in the first odd-numbered year after the adoption of the amendment; that is, at the general election in 1915. In the meantime the office, having been created and being without an incumbent, is vacant; therefore it should be filled by appointment. The Governor appointed the defendants to the office on March 27, 1914; but the term of his appointees is limited to the last day of December, 1914, because the vacancy occurred January 1, 1914. An election to fill a vacancy which occurs not less than three months before the next general election must be held at the next general election, and the officer so elected must be elected for a full term; and it is only until the vacancy is so filled that the Governor may appoint.

The people did not intend so to confuse us. They left the Governor's power of appointment intact. By plain, unmistakable, and appropriate language, they provided for a new situation in a manner satisfactory to themselves and in harmony with the other provisions of the organic law.

We are constrained to hold therefore that the offices of the two additional county judges in Kings county were created on the amendment becoming part of the Constitution; that the method of filling these offices in the first instance, and the time when they should be first filled, were explicitly prescribed; that the prescription is exclusive; and that the filling of the office by appointment of the Governor was unlawful.

I advise affirmance of the judgment and order.

CARR, RICH, and PUTNAM, JJ., concur.

JENKS, P. J. I concur in the judgment. But I do not accede to the proposition that offices were created on January 1, 1914, in the

sense that on that day they came into existence with all the attributes of a present office. I think that the sense and tense of the amendment is future. I think that the purpose of the people as expressed was to afford two additional county judges by the election therein prescribed. This is the essential and controlling feature, and the declaration or fiat that there shall be two additional county judges is subordinate to it and in furtherance of it. I do not find this feature in the mere isolated expression "shall be"; but at the same time "shall be" may be construed as expressing futurity in a constitution, and should be so construed when it is thus made harmonious with the other language thereof. The effect of the amendment was not to create forthwith two existing offices, which were not to be filled by the election of 1915, but rather to create offices of which the terms would begin when the prescribed election would provide the judges to fill the offices. If the offices were created as of January 1, 1914, then there were, thereupon and thereafter, offices which being without incumbents were vacant. As a general proposition, a new office for which no express provision as to immediate incumbency is made, being vacant, may be filled by invocation of any provision of law generally applicable. Cyc. vol. 29, p. 1402. And a statute which affords the power of appointment is not in conflict with a constitutional provision that provides a popular election. Throop on Public Officers, § 433.

I cannot read by implication that the people have created an existing office and yet have forbidden that such office shall be filled at all in any way until the election of 1915, because they have provided that it shall then be filled by an election. It seems to me that the people did not intend such a vain thing.

I think that such construction is within the rules laid down in the learned opinion of my Brother STAPLETON. I may add that it was not essential to the general constitutional scheme for the election of officers of this kind that the election of the additional county judges must be deferred until 1915. The election could have been provided for in the same year in which this amendment was put to vote, and hence in an odd-numbered year. State ex rel. Thompson v. Winnett, 78 Neb. 379, 110 N. W. 1113, 10 L. R. A. (N. S.) 149, 15 Ann. Cas. 781. The force of this suggestion is that the people were not required to postpone the election until 1915, with the alternative of a departure from the general constitutional scheme.