Arnold Gr. Fraiman, J.
Petitioners in this special proceeding are five residents of that portion of the lower East Side of Manhattan which is within the territorial jurisdiction of New York City Community School Board District 1 (“ Community Board 1 ”). Respondents are the Board of Elections and Board of Education of the city, the City Clerk, and five individual members of Community Board 1, each of whom was appointed by that board to fill a vacancy thereon until June 30, 1973, that is, for the unexpired term of the departing member. One of the individual respondents was appointed in July, 1970; two were appointed in May, 1972; one in June, 1972; and one in August, 3972.
It is petitioners’ position that section 2590-c (subd. 6, par. [34], cl. b) of the Education Law, pursuant to which the individual respondents were appointed, is unconstitutional in that it is in violation of sections 3 and 4 of article XIII of the New York State Constitution. They seek a determination that the offices now held by the individual respondents shall be vacant as of January 1, 1973. In addition, they urge that such vacancies be filled at the general election to be held on November 7, 3972, and they seek a direction to the Board of Elections that it accept the nominating petitions heretofore submitted to it by the *740 individual respondents, so that their names may be placed on the ballots as candidates for the vacancies they allege exist.
Section 2590-c of the Education Law is concerned with the composition of community boards. Subdivision 6 (par. [34], cl. b) provides as follows: “Vacancies shall be filled for the unexpired term by the community board.”
Section 2590-b (subd. 2, par. [d]) of the Education Law provides that the members of each community board shall be elected in March, 1970 for a term to expire on June 30, 1973. Each of the nine original members of Community Board 1, including the five who were replaced by the individual respondents, were so selected. Thus, under subdivision 6 (par. [34], cl. b) of section 2590-c, the terms of the individual respondents would run until June 30, 1973, at which time they would be replaced, unless re-elected to an additional two-year term at an election to be held on the first Tuesday in May, 1973 (Education Law, § 2590-c, subd. 2). However, sections 3 and 4 of article XIII of the New York State Constitution provide as follows: “ [Vacancies in office; how filed.] § 3. The legislature shall provide for filling vacancies in office, and in case of elective officers, no person appointed to fill a vacancy shall hold his office by virtue of such appointment longer than the commencement of the political year next succeeding the first annual election after the happening of the vacancy.
“ [Political year and legislative term.] § 4. The political year and legislative term .shall begin on the first day of January ”.
The issue thus posed is whether members of community school boards are “ elective officers ” within the meaning of section 3 of article XIII of the Constitution. If they are, the individual respondents, all of whom were appointed to fill vacancies, may constitutionally serve only until January 1,1973.
In early decisions interpreting section 5 of article X of the Constitution of 1894, whose terms were identical to those of section 3 of article XIII it was held that the phrase “ elective officers” included only those officers whose positions were created by the Constitution, as distinguished from the Legislature. Thus, in People ex rel. Ward v. Scheu (167 N. Y. 292 [1901]), the court held that the phrase did not apply to the Commissioner of Public Works in the City of Buffalo, because that office was not a constitutional one. Accordingly, it upheld a provision of the Buffalo Charter which in that case permitted the Mayor to fill a vacancy in that office by appointment for a period of approximately 15 months.
The distinction drawn by the courts between legislative officers and constitutional officers continued for many years. In *741 1915, the Court of Appeals held that a member of the Board of Aldermen of New York City held a constitutional and elective office rather than an office created by the Legislature and therefore the filling of vacancies for that position was governed by section 5 of article X and no vacancy could be filled/1 for a longer period than the interval between the occurrence of the vacancy and the beginning of the next political year.” (People ex rel. Deits v. Hogan, 214 N. Y. 216, 229 [1915]). In Matter of Schwab v. Boyle (174 App. Div. 442 [1st Dept., 1916], affd. 219 N. Y. 561) decided the following year, the court again had before it a case involving the New York City Board of Aldermen. In following the earlier decision in Diets (supra) the court held (supra, p. 445) 11 The words 1 elective officers, ’ as used in the Constitution, relate to officers selected by the qualified voters of the State, or some political subdivision of it, as distinguished from officers selected in another way * * its purpose being to enable the qualified voters to select their own officers.”
It was not until 1934 that the distinction between constitutional officers and those created by the Legislature was eliminated by the Court of Appeals. In Matter of Burke v. Cohen (265 N. Y. 210 [1934]), the court had before it the question of whether the Comptroller of the City of New York held a constitutional office. In upholding the applicability of section 5 of article X to that office the court stated as follows: 11 In the light of fuller experience the distinction drawn by this court in People ex rel. Ward v. Scheu (167 N. Y. 292) between vacancies in offices created by the Constitution and vacancies in other city offices has proven impracticable. Inroads into the rule of that case create constant doubt. We now hold that article X, section 5, of the Constitution applies to all elective city offices. ” (supra, p. 213). See also Matter of Ross v. Cohen (283 N. Y. 388 [1940]), which reaffirmed the court’s interpretation in Matter of Burke (supra), in a case which concerned the City Council of New York.
The only decision since Matter of Ross v. Cohen (supra), involving an interpretation of section 3 of article XIII is Matter of Howard v. Rockefeller (15 N Y 2d 927 [1965]), and it is upon this case that respondents principally rely. There, one Alecca was elected an alderman of the City of Kingston at the general election held in 1963 for a term of two years commencing January 1, 1964. He resigned prior to September 30, 1964 and the Mayor thereupon appointed one Sinsabaugh to fill the vacancy until December 31, 1965, pursuant to a provision in the city charter which stated that “If a vacancy happens in any city *742 office * * * it shall be filled as follows: In elective offices * * * by appointment for the residue of the term by the mayor.” Subsequent to the general election of November, 1964, petitioners brought a proceeding seeking a judgment declaring that the office in question would be vacant as of January 1,1965, pursuant to section 3 of article XIII. The court, in what can best be described as a cryptic decision, reversed that part of the determination of the Appellate Division which had affirmed Special Term’s granting of the petition insofar as it sought to have the position declared vacant, and held (p. 929): “ that the Mayor had power to and did on September 30, 1964 appoint William Sinsabaugh * * * for a term which will run to and expire on December 31, 1965 pursuant to section 18 of the city charter. Section 3 of article XIII of the State Constitution does not invalidate such an appointment. We pass on no other question.”
In view of its failure to refer to any of its earlier decisions which had specifically held that the term “ elective officers ” as used in section 3 of article XIII applied to aldermen and members of a city council, it must be concluded that the Howard case was decided on its facts. There are two significant factual distinctions, both premised upon subdivision 1 of section 42 of the Public Officers Law, that would serve to explain the seeming inconsistency between .the decision in Howard and those in the earlier cases. That section provides that ‘ A vacancy occurring before September twentieth of any year in any office authorized to be filled at a general election * * * shall be filled at the general election held next thereafter, unless otherwise provided by the constitution, or unless previously filled at a special election. ” (Italics added.)
As noted in Howard, the proceeding was not commenced until December, 1964, after the general election for that year had already been held. Another distinction is that the Howard case went off on the fact that the Mayor in that case, according to the opinion, made his appointment “ on September 30, 1964.” Thus, if the Court of Appeals in the Howard case assumed that the vacancy occurred after September 20, as would appear from their decision, ■ the mandate of the Public Officers Law (§ 42, subd. 1) that it be filled at the general election of 1964 would not apply. This same distinction was drawn by the Attorney-General in several opinions interpreting that case. (See, for example, 1966 Opns. Atty. Gen. [Inf. Opns.] 90, and 1967 Opns. Atty. Gen. [Inf. Opns.] 152.) For the foregoing reasons, the court is constrained to conclude that the Howard case did not overturn Matter of Burke (65 N. Y. 210, supra), or Matter of *743 Ross (283 N. Y. 388, supra), and that the definition of “ elective officers ” as set forth in those cases is still the law today.
The final argument raised by respondents in seeking to uphold the constitutionality of subdivision 6 (par. [34], cl. b) is that members of the community board, being a part of the educational system of the State, are somehow sui generis and are not therefore “ elective officers ” under article XIII. While it is true that the court has held that members of a board of education in a city are “ officers of an independent corporation separate and distinct from the city * * * and are not city officers ” (Lanza v. Wagner, 11 N Y 2d 317, 326 [1962]), that same case specifically held that such persons are State officers (p. 327). As such, I find that members of Community Board 1 are “ elective officials ” within the meaning of the Constitution.
For the foregoing reasons the court holds that subdivision 6 (par. [34], cl. b) of section 2590-c of the Education Law is violative of section 3 of article XIII of the Constitution, and is unconstitutional. The court therefore declares that the offices presently held by the individual respondents shall be vacant as of January 1, 1973.
The additional relief sought by petitioners is a direction that five new members of Community Board 1 be elected at the general election on November 7 to fill the vacancies which will exist on January 1, 1973, and that petitioners’ names be placed on the ballot as candidates for those positions. Respondent Board of Elections opposes this portion of the petition on dual grounds. The first ground is easily disposed of: it is contended that the petitions submitted by petitioners to the Board of Elections were not filed within the time limitations specified in subdivision 14 of section 149-a of the Election Law. That provision requires that nominating petitions for independent nominations for offices to be filled at the general election on November 7, 1972 be filed not later than August 31, 1972. Petitioners did not file their petitions until October 6, when one was submitted, and October 10, when the remaining four were submitted. However, petitioners correctly point out that the time for filing nominating petitions for positions on community boards is specifically governed by subdivision 6 (par. [1]) of section 2590-c of the Education Law. This provides that such petitions be filed with the Board of Elections at least four weeks before the election. In the face of the conflict between the general provisions of the Election Law and the specific provisions of the Education Law, the specific law must prevail. (Cimo v. State of New York, 306 N. Y. 143,149 [1953]; Matter of Waldes v. State Tax Comm., 17 *744 A D 2d 47, 50 [3d Dept. 1962].) The petitions were therefore timely filed.
However, the second objection raised by the Board of Elections is insuperable: it argues that as a practical matter it would be virtually impossible in the short time remaining before November 7 to provide for an orderly election to fill vacancies on Community Board 1. It points out that since the last school board election was in 1970, a new registration drive would have to be instituted; that certain persons entitled to vote in school elections are not entitled to vote in a general election; that registration proceedings are separate and would have to be completed; and finally, that school districts are not coterminous with election districts and polling places would not necessarily be the same for both elections. In such circumstances the court will not compel the board to hold an election on November 7, particularly, where as here, petitioners waited until the last possible moment to file their petitions and to institute this proceeding.
Still more cogent reason exists for not directing that the vacancies be filled at the election on November 7. It is now too late for any other nominating petitions to be presented. Thus, petitioners would run unopposed if the election were held on that date, and such an election would be meaningless. Moreover, the court is aware that its decision will affect not only Community Board 1 but other community boards as well, and elections obviously could not be held on November 7 to fill vacancies on such boards in the absence of any nominating petitions whatever having been filed in those districts. Accordingly, so much of the petition as seeks to compel the Board of Elections to place petitioners’ names on the ballot at the general election to be held on November 7 is dismissed. In so holding, the court is mindful that under the Public Officers Law (§ 42, subd. 3) the Governor may in his discretion call a special election to fill the vacancies as will exist in the instant case on January 1, 1973. If such an election were scheduled for a date subsequent to November 7 it would obviate all of the difficulties referred to above.