'The People ex rel. Richard E. Hatfield, Respondent, *v.*
Theodore S. Comstock, Appellant.

'The provision of the State constitution (art. 10, § 2), declaring that county officers, whose election or appointment is not provided for in the constitution, shall be elected by the electors or appointed by the board of supervisors of the county, as the Legislature shall direct, includes superintendents of the poor; and the power conferred upon the Legislature embraces the power to fill vacancies in that office.

Under the provisions of the statute of 1854, declaring that in counties wherein the boards of supervisors determine to have but one superintendent of the poor, he shall hold his office for three years, and providing for triennial elections thereto (chap. 188, Laws of 1854), and under the provision of the statute of 1847 (§ 4, chap. 498, Laws of 1847), authorizing boards of supervisors to fill vacancies in that office, where a vacancy occurs in a county whose board of supervisors have determined to have but one superintendent, said board may fill the vacancy by appointment for the unexpired term.

The provision of the constitution (§ 5, art. 10), declaring that "in case of elective officers no person appointed to fill a vacancy shall hold his office * * * longer than the commencement of the political year, next succeeding the first annual election after the happening of the vacancy," has no application to the office of superintendent of the poor; it speaks only of offices which are certain and fixed as elective offices, not of those which may become so by the action of the Legislature.

Accordingly *held,* where the superintendent of the poor of Oneida county, who was elected in 1876, was removed by the governor, and defendant was appointed in October, 1878, by the board of supervisors to fill the vacancy; that defendant's term did not expire until January 1, 1880; and that therefore the election of relator to that office at the annual election in 1878 was unauthorized.

Every presumption is in favor of the validity of an enactment of the State Legislature, within the provision of legislative powers; and in order to successfully challenge its constitutionality, it is necessary to find some constitutional provision which either restricts or prohibits the exercise of that power in the particular case.

*People ex rel. Hatfield* v. *Comstock* (18 Hun, 311), reversed.

(Argued September 29, 1879; decided October 7, 1879.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, in favor of relator, entered upon an order reversing a judgment in favor of defendant, and directing judgment for relator. (Reported below, 18 Hun, 311.)

This was an action in the nature of a *quo warranto*, to determine the title to the office of superintendent of the poor of the county of Oneida.

On the 4th of October, 1878, a vacancy was created in the office of superintendent of the poor in said county, by the removal by the governor of Thomas J. Brown, who was elected to the office in the fall of 1876, for a full term of three years, which commenced January 1, 1877. On the 22d of October, 1878, the board of supervisors appointed the defendant to fill such vacancy. At the general election in November, 1878, the relator and another person were voted for by the electors of said county for that office. The relator received a majority of the votes cast, and the board of canvassers gave him a certificate of election. He took the oath of office, filed a bond, and on the 1st day of January, 1879, demanded the office of the defendant, who refused to deliver the same.

Further facts appear in the opinion.

*Nicholas E. Kernan,* for appellant. The appointment of the defendant as superintendent by the board of supervisors of Oneida county was valid, and vested the office in the defendant for the remainder of Brown's term. (1 R. S. [6th ed.], 420, § 40; Constitution, art. 10, § 2; Laws of 1847, chap. 498, §§ 1–4; 2 R. S. [6th ed.], 811, § 18; Laws of 1854, chap. 188, § 1.) The election of the relator to the office of superintendent of the poor in November, 1878, was void. (*People ex rel. Furman* v. *Clute,* 50 N. Y., 451–459; *People* v. *Pinckney,* 32 id., 377–394, 395; *People* v. *Keeler,* 25 Barb., 23–26; *People* v. *Bull,* 46 N. Y., 57–60; Laws 1854, chap. 188, § 1; 2 R. S. [6th ed.], 811, § 18.) The office of superintendent of the poor is not, by the constitution, an elective office, and is not among those named in section 1 of article 10 of the constitution. The Legislature has the entire direction and control over the manner of filling it. (Constitution, art. 10, §§ 1, 5; *People ex rel. Furman* v. *Clute,* 50 N. Y., 451; *People* v. *Keeler,* 25 Barb., 23;

*People* v. *Green*, 2 Wend., 274; *People* v. *Albertson*, 55 N. Y., 50–54; 1 R. S. [6th ed.], 428, 429, § 8; *People ex rel. Hovey* v. *Ames*, 19 How., 551–556; *People* v. *Pinckney*, 32 id., 377–393; *People* v. *Draper*, 15 id., 532.) The election of the relator at the general election on the 5th of November, 1878, was void, for the reason that no notice of such election was given to the electors. (1 R. S. [6th ed.], 430–431, §§ 3, 14; *People* v. *Allen*, 6 Wend., 486; *Ex parte Heath*, 3 Hill, 42–47; *People* v. *Holly*, 12 Wend., 481; *People* v. *Cook*, 4 Seld., 67; *People ex rel. Barnes* v. *Gardner*, 24 N. Y., 583; *People* v. *Cowles*, 13 id., 350.)

*E. H. Risley*, for respondents. The office of superintendent of the poor is elective, within section 5, article 10 of the constitution. (*People* v. *Fisher*, 24 Wend., 214, 219; *Settle* v. *Van Evrea*, 49 N. Y., 281.) When a vacancy occurs in it the statute (Laws 1847, chap. 498), making the office elective, is modified, and an election may intervene in accordance with the spirit and meaning of the constitution and laws, and to carry out the purposes for which the office was created. (*People* v. *Sup'rs Ulster Co.*, 34 N. Y., 272; *Tallman* v. *S. and B. R. R. Co.*, 4 Keyes, 135; *People* v. *Albertson*, 55 N. Y., 55.) The election laws of the State are directory, and must be liberally construed. (*People* v. *Cook*, 8 N. Y., 67; *People* v. *Cowles*, 13 id., 350; *People* v. *O'Bren.*, 38 id., 195.)

CHURCH, Ch. J. It was suggested on the argument that an early decision in this case is important, in order that, if necessary, the office of superintendent of the poor for Oneida county may be filled at the ensuing election. We have therefore carefully considered the question involved, and have arrived at the conclusion that the decision at Special Term was correct, that the election of the relator in 1878 was unauthorized, and that by the appointment of the defendant in October, 1878, to fill the vacancy occasioned by the removal of Brown, he was entitled to hold during the

remainder of Brown's term, which would expire on January 1, 1880. We also concur in the opinion of Judge MERWIN, as to the construction of the provisions of the constitution and statutes relating to the subject.

By section 2 of article 10 of the constitution, it was provided that county officers whose election or appointment was not provided for in the constitution, should be elected by the electors of the respective counties, or appointed by the boards of supervisors, or other county authorities as the Legislature should direct. Superintendents of the poor were embraced in this class of officers. The power conferred upon the Legislature by this section covered the entire subject of filling the office of superintendent of the poor, and embraced necessarily the power to fill vacancies. The section is full and complete in itself, and vested in the Legislature express authority over the question to be exercised in its discretion in any manner it might see fit. The Legislature, at its first session after the adoption of the constitution, passed an act authorizing boards of supervisors to elect one or three superintendents of the poor, who should hold their offices for three years; and section 4 of the act provides that "boards of supervisors shall appoint county superintendents of the poor, or county treasurers to fill vacancies which may happen in such offices." (Laws of 1847, chap. 498.)

In 1854, the Legislature enacted that in the counties in which the boards of supervisors should determine to have but one superintendent he should hold his office for three years, and at the next general election preceding the expiration of his term, and "triennially thereafter" one superintendent should be elected. (Laws of 1854, chap. 188.) In 1860, the board of supervisors of Oneida county passed a resolution adopting these provisions. Pausing here, the question would admit of but one solution. We have unrestricted power conferred upon the Legislature over the subject including the power to fill vacancies. We have the action of the Legislature providing by apt words for an

360 · People ex rel. Hatfield v. Comstock. [Oct.,

Opinion of the Court, per Church, Ch. J.

election every three years only, and in case of vacancy in the meantime authorizing boards of supervisors to fill such vacancy by appointment. It is manifest that the Legislature intended that there should be no election oftener than once in three years for this office, and that all vacancies should be supplied by boards of supervisors. As no election could be held except every three years the vacancies authorized to be filled by the act of 1847 extended the entire period from the happening of the vacancy until the time when an election could be held. This is the legal import of the language employed, and necessarily results from the provision for a triennial election. It is claimed, and this is the point of the relator's contention, that section five, of article ten, of the constitution is applicable to this office, and hence that the vacancy could extend only to the first day of January succeeding the appointment. The provision is that " the Legislature shall provide for filling vacancies in office, and in case of elective officers, no person appointed to fill a vacancy shall hold his office * * * longer than the commencement of the political year next succeeding the first annual election, after the happening of the vacancy."

If the relator's position is correct there was no provision for filling this office during the year 1879, because the Legislature had only made provision for an election every third year, which would not occur until the fall of 1879. (*People* v. *Green*, 2 Wend., 274.) The clause does not execute itself, but power is conferred upon the Legislature, and requires the action of that body. It is significant that the first Legislature after the adoption of the constitution, chosen presumably for the purpose of organizing the government under its provisions, adopted a different construction which was confirmed by the act of 1854. Although not conclusive, contemporaneous construction has always been regarded of some weight in construing any written instrument.

We are of opinion that this provision has no application to the office in question. Section one, of article ten, provides that certain specified officers shall be elective : sheriffs, clerks,

coroners, and district-attorneys, and that they shall be elected once in three years, and as often as vacancies shall happen. The same provision was in the constitution of 1821, except that a less number of officers were specified. Under that constitution the Legislature authorized the governor to fill vacancies in the specified offices, and in *People* v. *Fisher* (24 Wend., 215), it was held the act did not contravene this clause and was valid, because no provision was made for filling a vacancy, between the happening of the vacancy and the time when an election would be had, and section five was doubtless inserted in the constitution of 1846, to make certain, that which by the former constitution was in doubt.

It must be borne in mind that the senate and assembly possess all legislative power, except when forbidden or restricted by other provisions of the same instrument, and hence it is necessary in order to successfully challenge the constitutionality of an act of the Legislature, within the purview of legislative power, to find some provision which either restricts or prohibits the power which it has exercised. Every presumption is in favor of its validity. The language of the section is general, and might embrace all offices, but it can have full effect and operation by referring its provisions to such offices as the constitution itself declares to be "elective offices," and when as we have seen by section two, express power was conferred upon the Legislature over the subject of appointing or electing this officer, including filling vacancies, the conclusion is irresistible that it was not intended to be embraced in section five. Section two disposed of that question, and section five was unnecessary for the purpose. Besides that section speaks of offices that are certain and fixed as elective offices, and not those which may become so by the action of the Legislature in pursuance of section two. If the latter class had been intended to be included in section five, it would have been so specified. Without such specification it cannot be presumed that the convention intended to impair or change the legal effect of section two, especially as section five can have full effect

without giving it such a construction. We think it was intended to apply to the offices specified in section one.

The views of this court expressed by FOLGER, J., in *People* v. *Clute* (50 N. Y., 451), tend to support this conclusion. Adopting the reasoning of Judge MERWIN, we deem it unnecessary to pursue the subject.

The judgment of the General Term must be reversed, and that of the Special Term affirmed.

All concur.

Judgment accordingly.