Daniels, J.
The petitioner is a railroad corporation created and organized under the authority of chapter 252 of the Laws of 1881 to construct and operate a street surface railroad in Thirty-fourth street, in the city of Hew York. Its road is designed to be a double track surface railroad, extending over routes as they have been described in the application. Erom connections with the Hudson river, at the foot of West Thirty-fourth street, through, along and upon West Thirty-fourth street and East Thirty-fourth street, to connections with the ferry at the foot of East Thirty-fourth street, East river ; from connections with this company’s route in West Thirty-fourth *370 street, at Tenth avenue, through, along.and upon Tenth avenue, to West Forty-second street; thence through, along and upon West Forty-second street, to connections with the ferries at the foot of that street at the Hudson or North river; together with all switches, sidings, turnouts and turn-tables and suitable stands as may be necessary for the convenient working of such road.
Notice of the application has been given, as it was provided it should be, by section 5 of this act. This notice has been required to be given to each abutting property owner who may be found not giving his consent to the construction and operation of the railroad, and the only object to be promoted by giving such notice was to secure these owners an opportunity to appear and oppose the application made for the appointment and selection of commissioners. The act has not in terms declared that object, but it results from the fact that notice of the application has been directed to be given to the persons withholding their consent, and that could have been designed for no other purpose than to permit them to contest the application for the appointment and selection of commissioners. On behalf of the owners of abutting property on that part of Thirty-fourth street extending from Sixth, easterly to Lexington avenue, the right of the company to the appointment of commissioners has been contested and denied. This portion of Thirty-fourth street, with the exception of church edifices fronting upon parts of it, has been devoted to the erec tion and maintenance of private residences, many of them of a very costly character, and their owners to a great extent very decidedly object to the construction and operation of the railroad over this portion of the street. In support of their opposition various facts have been relied upon to render it ' effectual, which may be more appropriately considered hereafter.
The extreme length of the petitioner’s proposed railroad is 12,357 feet, over the much greater part of which other surface railroads have already been built and are now maintained and *371 operated. One of these railroads is that of the Forty-second Street, Manhattanville and St. Midiólas Avenue Railway Company. That includes the space between the Hudson river and Tenth avenue for a distance of 1,800 feet. The Forty-second Street and Grand Street Ferry Railroad Company also has its two tracks upon this portion of Forty-second street, and then proceeds by the way of Tenth avenue to Thirty-fourth street, a distance of 2,100 feet, and thence upon Thirty-fourth street to Sixth avenue for a further distance of 3,600 feet. And the Mew York and Harlem Railroad Company owns, maintains and operates a double track surface railroad in Thirty-fourth street, extending easterly from Lexington avenue to the East river, a distance of 2,304-1- feet. These several railroad companies have refused their consent to the construction of the petitioner’s railroad, and upon that fact the resistance has been mainly placed to the success of the petitioner’s application.
By section 14 of chapter 252 of the Laws of 1884, under which the petitioner has been incorporated, it has been provided and declared that, “ except for necessary crossings no street surface railroad company shall construct, extend or operate its road or tracks in that portion of any street, avenue, road or highway in which a street surface railroad is, or shall be, lawfully constructed, except with the consent of the company owning and maintaining the same, provided, however, that any two or more railroad companies now existing, or hereafter formed under the provisions of this act, may join and unite and use each others’ tracks for a distance not exceeding one thousand feet, whenever the court upon an application for the appointment of commissioners, next hereinafter provided, shall be satisfied that such use is actually necessary to connect main portions of a line to be constructed as an independent railroad, and that” the public convenience requires the same, in which event the right of such use shall be given only for a compensation, to an extent and in a manner to be ascertained and determined by commissioners to be appointed by *372 the courts, as provided in respect to1 acquiring title to real estate under chapter 140 of the Laws ■ of 1850, entitled ‘ An act to authorize the formation of railroad corporations, and to regulate the same,’ and the several acts amendatory thereof; or by the board of railroad commissioners in cases where the companies interested shall unite in a request for such board to act. Such commissioners, in determining the compensation to be paid for the use by one company of the tracks of another, shall consider and allow for the use of tracks and for all injury and damage to the company whose tracks may be so used.” And by its very plain language it has been made impracticable, as the facts have been made to appear, for the petitioner to construct or maintain a surface railroad over so much of these streets as have been already devoted to the construction and operation of the other street surface railroads. To that extent the act is very plain, and was designed to prevent the construction and operation of competing surface railroad lines against the consent of the companies whose railroads have been previously constructed and are still in operation. The intention and object of the section throughout have not been declared in such' language as to be entirely free from ambiguity, but upon this particular subject no ground has been left for misapprehending the intention of the legislature. It has, however, been suggested that the legislature did not possess the authority under the constitution to provide or impose this restriction or disability, but the constitution has nowhere, either in express words or by reasonable implication, deprived the legislature of this power. It has, on the contrary, by section 18 of article 3, invested the legislature with plenary authority to pass general laws, providing for all the cases enumerated in this section, and one of those cases which cannot be provided for by a special law is that of granting to any corporation, association or individual, the right to lay down railroad tracks. But it was made the imperative duty of the legislature to pass general laws providing for that object, and chapter 252 of the Laws of 1884 *373 is one of the acts which has been passed by the legislature to provide for the construction and operation of railroads.
Heither this portion of the constitution, nor any other, has further abridged the power of the legislature than to declare that “ no law shall authorize the construction or operation of a street railroad except upon the condition that the consent of the owners of one-half in value (of) the property bounded on, and the consent also of the local authorities having the control of that portion of a street or highway upon which it is proposed to construct or operate such railroad be first obtained, or in case the consent of such property owners cannot be obtained, the general term of the supreme court in the district in which it is proposed to be constructed may, upon application, appoint three commissioners who shall determine, after a hearing of all parties interested, whether such railroad ought to be constructed or operated, and their determination confirmed by the court may be taken in lieu of the consent of the property owners.” With these specified restrictions as to the laws which should be passed the constitution has not undertaken to declare or define what the act may contain or be included in it. It cannot permit a street railroad to be constructed or operated except upon a compliance with these requirements. So far a disability has been imposed upon the legislature and its legislative authority has been limited, but beyond that no restriction over this subject has been placed upon its legislative power. How the end intended to be accomplished, should be secured after the observance of these restraints, was necessarily left to the judgment and discretion of the legislature. For so far as the act may be made to include subjects not within these specified restraints, it would clearly be within the broad grant of legislative authority made by the constitution to the legislature. And. that includes all legislative authority of every description not restricted or abridged by some express or implied prohibition of the constitution.
This subject was considered in People agt. Flagg (46 N. Y., 401), where it was said, in the opinion of the chief judge, with *374 the concurrence of all his associates, that “ all legislative power is conferred upon the senate and assembly; and if an act is within the legitimate exercise of that power, it is valid, unless some restriction or limitation can be found in the constitution itself. The distinction between the United States constitution and our state constitution is that the former confers upon congress certain specified powers only, while the latter confers upon the legislature all legislative powers. -In the.one case the power specifically granted can only be exercised. In the other all legislative powers not prohibited may be exercised ” (Id., 404). And Bank of Chenango agt. Brown (26 N. Y., 467) is to the same effect.
So much of the enactment as is contained in section 14 of chapter 252 of the Laws of 1884 is clearly an appropriate exercise of legislative power. It was entirely judicious for the legislature to prohibit the construction of another railroad in the public streets of a city, so far as they might previously have been occupied for that object by other companies acting under the sanction and authority of the law. And no refined or purely artificial distinctions can be permitted to stand in the way of the exercise of this legislative authority.
This subject was also considered by the same chief judge in People agt. Comstock (78 N. Y., 356), where it was held that “it must be borne in mind that the senate and assembly possess all legislative power, except when forbidden or restricted by other provisions of the same instrument, and hence it is necessary in order to successfully challenge the constitutionality of an act of the legislature within the purview of legislative power, to find some provision which either restricts or prohibits the power which it has exercised. Every presumption is in favor of its validity ” (Id., 361).
Between this section and the constitution there is neither a direct or manifest conflict, for it in no manner restricts, limits or enlarges what the constitution in any form has declared shall or shall not be done. There is no provision either in this portion or any other part of the constitution which has *375 declared expressly, or by implication, that a railroad company shall be entitled to construct and operate its railroad over that portion of a public street in a city which has already been devoted to or appropriated by another railroad. These provisions of the constitution have wholly been directed to other subjects. Their object has been to prevent the construction of railroad tracks under the authority of .a special law, and to require it to be done through the instrumentality of a general law. And even when a general law may be enacted, before a railroad can be constructed under its authority, it has been made requisite that the consent of the owners of one-half in value of the property bounded on that portion of the street or highway upon which it is proposed to construct or operate the railroad, as well as the consent of the local authorities having control of that portion of the street, shall be first obtained And if the consent of such owners cannot be obtained, then the general term of the supreme court may appoint three commissioners, whose determination, confirmed by the court, shall stand in the place of the consent of the property owners. So much has been required for the observance of these provisions of the constitution, but no more than that has in any form been declared. And consequently the entire range of legislation beyond that was within the authority, judgment and discretion of the legislature itself. And the prohibition which is now under consideration was plainly within that extent of legislative power, for it has not been declared that the legislature could make no further requirements than those declared by these provisions of the constitution. All that has been declared is, that these restraints shall be observed, and beyond them what further may be required for the protection of either public or private interests, has necessarily been confided to the good sense of the legislature. Over these streets it has control, and could determine and declare, as it has by this enactment, what further restraints should be imposed upon a street railroad company before it should have the right or privilege of using the streets for the construction *376 and operation of its railroad tracks. This part of the act, therefore, cannot be disregarded as a violation of any of the provisions or restraints of the constitution, but it should be considered a proper and judicious exercise of legislative power, and as such required to be observed by the court in the disposition of this application. Andas it has been made entirely evident from the fact that the consent of these other railroad companies has been withheld from the construction of the applicant’s proposed road, that the appointment of the commissioners to hear and determine the parties interested and report whether the railroad ought to be constructed would be entirely futile, the application should not be allowed to prove successful.
It has been suggested that the court has no discretion which it is at liberty to exercise ujion this subject. For by section 5 of chapter 252 of the Laws of 1884 it has been provided that upon due proof of the service of the notice required to be given, the general term “ shall appoint three disinterested persons who shall act as commissioners.” But that this was not intended to be mandatory is quite clear from the preceding portions of the act. For if upon mere proof of service of the notice it should become the unqualified duty of the court to appoint the commissioners there could be no useful object whatever in requiring it to be served. It would be no less than absurd to require a notice to be given to the parties opposed to the construction and operation of the railroad, and upon their appearance before the court to deny them the right to object, as that would be denied if the commissioners must be appointed upon mere proof of service of the notice. That could not have been the design of the legislature. But what was intended, as has already been observed, was that the property owners opposing the construction of the railroad should be afforded an opportunity of resisting the application for the appointment of the commissioners, and to extend this opportunity to them this notice was required to be served. The act, therefore, although in form mandatory, is required to be *377 construed as merely authorizing the court to appoint the commissioners if the exercise of that authority shall appear discreet and just after hearing the parties opposed to the construction of the railroad. And that this was the design of this portion of the law is made further evident from the provisions contained in the constitution itself, for by those provisions it has been declared that the general term “ may ” upon application appoint the three commissioners. And it is not to be supposed as long as a different construction is well warranted by this portion of the act that the legislature designed to render the duty of the court any more imperative than that had been prescribed by the constitution itself. The rule of construction, on the contrary, would require the act as that may be done, in view of its other provisions, to be harmonized with the constitution, and to leave the power to be exercised by the general term discretionary in its nature.
Instances do undoubtedly arise where the word “ may,” which has been employed as descriptive of the powers of the general term over this subject, has been construed to be mandatory and of the same effect as the word “ shall.” But that construction. has not been given to the word “may” when it has been employed as it is in this part of the constitution of the state. For by no part of that which precedes or follows this delegation of authority has the constitution employed language indicating it to be the duty of the court to appoint the commissioners as a matter of course where the consent of a majority of the property owners cannot be obtained. And it is a remarkable fact that under the constitution, with very slight exceptions this word “may” has only been employed when it was intended that the power to which it referred should be of a discretionary character. Section 8 of article 1 and T of article 5 seem to be exceptions to this rule, but in other cases, where the intention has been manifested that the directions of the constitution shall be imperatively carried into effect, the word “ shall ” has with great uniformity been emploved. More care in this respect *378 has been observed than is usually applied to the enactment of statutes. And as the word “ may ” has been so understandingly employed in the constitution, it must be allowed to have its ordinary force and effect in its provisions where, from the subject-matter to which it relates, or from the context, no different intention has been manifested. In this part of the . constitution the word seems to have been used in the ordinary understanding of its signification, and it stands immediately in contrast with the declared duty of the commissioners after they shall have been appointed, concerning whom it has been said that they “shall determine ” after a hearing, etc., whether the railroad ought to be constructed. Even if this language had been included in the enactment of a statute, it would require the same construction to be given to it. For it is a rule of construction which has been applied to this particular word that “ the ordinary meaning of the language must be presumed to be intended, unless it would manifestly defeat the object of the provisions” (Miner agt. Mechanics' Bank, etc. (1 Peters, 46, 64).
No antecedent duty has been required to be carried into effect by this provision of the constitution, and no existing public or private interest has been designed to be specially protected by it. And for that reason also this construction of the word “ may ” is clearly warranted. In the cases where it has Deen differently construed that construction has been given to it to carry into effect what under the circumstances was justly considered to have been the intention of the legislature, where the power conferred has been provided for rendering a duty effectual or for promoting the ends of justice, or securing public or individual interests, there the term has been construed to be mandatory. But where it is merely indifferent 'whether a thing shall be done or not, then the word “ may ” in an act is usually construed to confer a permissive authority. But where the public interest or private right requires that the thing should be 'done, then the word “may” is generally construed to mean the same as “shall”. *379 (People agt. Supervisors, 68 N. Y., 115, 119; Hagadorn agt. Roux, 72 N. Y., 583, 586; People agt. Superviors, 51 N. Y., 401).
From the manner in which this word “ may ” has been used1 in this part of the constitution, and its relation to the subject, provided for, it can therefore only be construed as designed to have been permissive and to empower the pourt, upon the application for the appointment of commissioners, to determine whether the appointment should be made or not. And where, as in the present case, it has been made entirely evident that the proposed railroad cannot be lawfully constructed by reason of the refusal of other railroad companies-already lawfully occupying the streets with their tracks to consent to its construction, the appointment of commissioners-should not be°made; for the hearing and report, if it should be favorable to the applicant, would, under this prohibition of the statute, be entirely without effect; and it could not have been in tented by the constitution that an appointment necessarily resulting in that manner should be made at all.
It has also been shown by the affidavits produced on behalf of the contestants that the amount of travel upon the portion of Thirty-fourth street bounded on the east by Lexington avenue and on the west by Sixth avenue is so slight as not to require for the convenience of the public the construction of this railroad. It has been further shown that the street is not at this time adapted to any prospective purposes of business, but so far must continue to be used for private residences that the value of the private property within these boundaries-is the sum of about ten millions of dollars, which, in the judgment of persons familiar with it, would be depreciated to the extent of three millions by the construction and operation of a railroad between these points. These facts have not been denied, and must f or tliat reason be regarded as having been established by the affidavits. And they supply a further as well as a very urgent reason for rejecting the application now made to the court. Under all the facts as they have been presented *380 that seems to be the plain course of duty. And as this court is required to exercise its judgment upon the propriety of the application, and the commissioners cannot, as the law has been enacted, be appointed with benefit to the applicant or advantage to the public, and the property of the abutting owners on this portion of the street would be seriously depreciated by its success, the application which has been made should be denied.
Beady, J., concurs.