The People of the State of New York ex rel. Karl S. Deitz, Appellant, *v.* Michael J. Hogan et al., Comprising the Board of County Canvassers of Kings County et al., Respondents.

The People of the State of New York ex rel. Philip Brady, Appellant, *v.* Michael J. Hogan et al., Comprising the Board of County Cavassers of Kings County et al., Respondents.

New York (city of) — aldermen of the city are constitutional officers to be elected by the people — vacancies in office thereof can be filled by appointment only to beginning of political year next succeeding the next annual election — votes for aldermanic candidates not regularly nominated to fill vacancies — when such votes should not be canvassed.

1. The New York city aldermen are constitutional officers, elective when the Constitution was adopted and elective now — and so long as they are both constitutional and elective they fall within the

purview of section 5 of article 10, which provides that in case of elective officers, no person appointed to fill a vacancy shall hold his office by virtue of such appointment longer than the commencement of the political year next succeeding the first annual election after the happening of the vacancy, and no vacancy in the office can be filled for a longer period than the interval between the occurrence of the vacancy and the beginning of the next political year, and it follows that section 18 of the charter of the city of New York (L. 1901, ch. 466), so far as it provides that a person elected to fill a vacancy in the board of aldermen shall serve for the unexpired portion of the term is unconstitutional. (*Long* v. *Mayor, etc., of N. Y.*, 81 N. Y. 425, distinguished.)

2. The relators claim to have been elected at the general election in 1914 to fill vacancies arising from the expiration of the terms of aldermen who were appointed to fill vacancies caused by death, and whose terms in fact expired on December 31, 1914, by reason of the constitutional provision (Art. 10, § 5). The power of the board of aldermen to fill the existing vacancies for the full term does not seem to have been publicly questioned before that election and no notice was given of an election for that purpose. Those who participated in the election, except the relators and their friends who voted for them, acted on the assumption that no aldermen would be or lawfully could be voted for to fill the vacancies in question, because of the further assumption that there were no vacancies then existing. *Held*, that this fact, based upon the assumed validity of a statutory provision which had never theretofore been questioned, deprived the proceeding of the character of an election to fill such vacancies. Although there were vacancies and by reason of the constitutional provision there should have been an election in 1914 for aldermen in the fifty-first and fifty-second aldermanic districts of the city of New York, and some votes were cast on that day for the relators in their respective aldermanic districts, the votes cast for the relators respectively as candidates for such office should not be canvassed.

*People ex rel. Deitz* v. *Hogan*, 165 App. Div. 298, affirmed.
*People ex rel. Brady* v. *Hogan*, 166 App. Div. ——, affirmed.

(Argued January 11, 1914; decided February 25, 1915.)

APPEAL by the relator, Karl S. Deitz, from an order of the Appellate Division of the Supreme Court in the second judicial department, entered on the 17th day of December, 1914, reversing an order of the Supreme Court in Kings

county which directed the issuance of a peremptory writ of mandamus requiring the board of county canvassers to open the envelopes containing void and protested ballots cast at the general election held in November, 1914, in the fifty-second aldermanic district of the city of New York and to canvass and return the votes that were cast for the said relator for the office of alderman from that district.

Appeal by the relator, Philip Brady, from an order of the said Appellate Division, entered on the same date, reversing an order of the Supreme Court in Kings county, similar in all respects to the order in the case of Karl S. Deitz, except that it related to the fifty-first aldermanic district and the office of alderman therein, instead of the fifty-second district.

The facts, so far as material, are stated in the opinion.

*Robert L. Luce, Edgar M. Cullen, James D. Bell* and *John D. Mason* for appellants. The office of alderman is a constitutional office. (N. Y. Const. art. 3, §§ 5, 26, 28; art. 10, § 2; art. 12, §§ 2, 3; *Rathbone* v. *Wirth,* 6 App. Div. 277; 150 N. Y. 459; *People ex rel. Howard* v. *Bd. of Suprs.,* 160 N. Y. 687; 42 App. Div. 510; *People ex rel. Hon Yost* v. *Becker,* 203 N. Y. 201; *People ex rel. Brown* v. *Frazier,* 203 N. Y. 136; *People ex rel. Swift* v. *Luce,* 204 N. Y. 478; *People ex rel. Albertson* v. *Bolton,* 55 N. Y. 50; *People ex rel. Wood* v. *Draper,* 15 N. Y. 532; *Matter of Markland* v. *Scully,* 203 N. Y. 158.) The office of alderman is an elective office, made so by the Constitution. (*Maxmilian* v. *Mayor, etc.,* 62 N. Y. 160; *Naumburg* v. *City of Milwaukee,* 146 Fed. Rep. 641; *Fire Ins. Co.* v. *Village of Keeseville,* 148 N. Y. 46; *People ex rel. Wood* v. *Draper,* 15 N. Y. 532; *People* v. *Albertson,* 55 N. Y. 50; *Rathbone* v. *Wirth,* 150 N. Y. 459; 1 Dillon on Mun. Corp. [5th ed.] 157; *Matter of Brenner,* 170 N. Y. 185; *Mayor, etc.,* v. *Davenport,* 92 N. Y. 604; *Nelson* v. *City of Murphysboro,* 179 Fed. Rep. 905.) The vacancies created by Alderman Coleman's death and Col.

Kline's resignation must be filled at the next ensuing election after the vacancy. (N. Y. Const. art. 10, § 5; *Matter of Markland* v. *Scully*, 203 N. Y. 158; *People ex rel. Hatfield* v. *Comstock*, 78 N. Y. 356.) Every qualified elector was entitled to vote for an alderman to fill the vacancy. (*People ex rel. Goring* v. *Wappingers Falls*, 144 N. Y. 616.) The boards of election in the various election districts of the fifty-second and fifty-first aldermanic districts respectively must canvass and return the votes cast for alderman, and the county canvassers must canvass these returns and certify the result to the board of elections of the city of New York. (L. 1909, ch. 22; *People ex rel. Goring* v. *Wappingers Falls*, 144 N. Y. 616.)

*Francis X. Carmody, amicus curiæ.* The board of aldermen of the city of New York is a constitutional body. (Const. of N. Y. art. 3, § 5.) The board of aldermen of the city of New York is a constitutionally elective body, since the duties which the legislature may and has devolved upon them under article 3, section 26, of the Constitution are those of constitutionally elective officers, namely, the board of supervisors. (*Warner* v. *People*, 2 Den. 272; *People ex rel. Bolton* v. *Albertson*, 55 N. Y. 50; *Matter of Brenner*, 170 N. Y. 185; *People ex rel. Wogan* v. *Rafferty*, 208 N. Y. 456.) The board of aldermen is elective, since it is legislative in character and has always been elective. (*People ex rel. Wood* v. *Draper*, 15 N. Y. 532; *People* v. *Mayor, etc.*, 25 Wend. 9.) As the board of aldermen of the city of New York is a constitutionally elective body, vacancies in it cannot be filled by appointment for a longer period than the end of the political year in which the vacancy occurs. (N. Y. Const. art. 10, § 5.) As a vacancy existed in the board of aldermen, the electors had a right to vote for a candidate to fill it. (*People ex rel. Goring* v. *Wappingers Falls*, 144 N. Y. 616.)

*Frank L. Polk, Corporation Counsel* (*Thomas F. Magner* and *Charles J. Druhan* of counsel), for Board of County Canvassers, respondents.

*Louis Marshall* and *Harry E. Lewis* for respondents. The office of alderman of the city of New York is not a constitutional but a legislative office. Hence it was competent for the legislature to empower the board of aldermen to fill vacancies in the office for the unexpired portion of the term as to which vacancies might occur, and an election to fill such vacancies was not warranted. (L. 1901, ch. 466, § 17; *People ex rel. Hatfield* v. *Comstock,* 78 N. Y. 356; *People ex rel. Ward* v. *Scheu,* 167 N. Y. 292; *Matter of Schultes,* 33 App. Div. 524; *Matter of Mayor, etc.,* 81 N. Y. 425; *Wilcox* v. *McClellan,* 110 App. Div. 378; 185 N. Y. 9; *Scott* v. *Vil. of Saratoga Springs,* 199 N. Y. 178; *People ex rel. Wogan* v. *Rafferty,* 208 N. Y. 451; *People ex rel. Howard* v. *Supervisors,* 42 App. Div. 210; 160 N. Y. 687.) The attempts of the appellants to elect themselves to the office of aldermen by a political subterfuge do not constitute an election. (*Trounstine* v. *Britt,* 212 N. Y. 421; *Matter of Delehanty* v. *Britt,* 212 N. Y. 457; *Matter of Lynch* v. *Britt,* 212 N. Y. 580; *Matter of Murphy* v. *Britt,* 212 N. Y. 582; *De Leyer* v. *Britt,* 212 N. Y. 565; *People ex rel. Woods* v. *Crissey,* 91 N. Y. 616.)

WILLARD BARTLETT, Ch. J.    In January, 1914, a vacancy occurred in the office of alderman for the fifty-first aldermanic district of the city of New York by reason of the resignation of the incumbent whose term would have expired on December 31, 1915.

In June, 1914, a vacancy occurred in the office of alderman for the fifty-second aldermanic district by reason of the death of the incumbent whose term would likewise have expired on the last day of the following year.

The board of aldermen, acting under section 18 of the

Greater New York charter (Laws of 1901, ch. 466), elected August Ferrand alderman for the fifty-first district, and William W. Colne alderman for the fifty-second district, each to serve for the unexpired portion of the term of his predecessor, to wit, until December 31, 1915.

The power of the board of aldermen thus to fill these vacancies does not seem to have been publicly questioned prior to the general election in 1914. At that election, however, as appears from the undenied averments in the petitions in these proceedings, votes were cast in the fifty-first district for the relator Philip Brady as alderman, and in the fifty-second district for the relator Karl S. Deitz as alderman, such votes being all that were cast in these districts for the office of alderman. Each of these special proceedings was instituted to compel the board of canvassers to canvass these votes which had been declared void by the election inspectors and not counted. The relators were successful at the Special Term, where they obtained orders granting peremptory writs of mandamus requiring a canvass of the votes thus cast for them; but these orders have been reversed by the Appellate Division, and the orders of reversal are now brought here for review.

The provision of the Greater New York charter in question is as follows: "Any vacancy which may occur among the members elected to the board of aldermen shall be filled by election by a majority of all the members elected thereto, of a person who must be of the same political party as the member whose place has become vacant; *and the person so elected to fill any such vacancy shall serve for the unexpired portion of the term.*" (Laws of 1901, ch. 466, § 18.)

The right of the board of aldermen to elect Messrs. Ferrand and Colne to serve for the whole of the unexpired terms of their respective predecessors depends upon the constitutional validity of the clause which I have emphasized.

It is contended in behalf of the appellants that their right could extend no further than to fill the vacancies by choosing successors who should serve only until December 31, 1914.

This proposition is based upon section 5 of article X of the Constitution which reads as follows: "The legislature shall provide for filling vacancies in office, and in case of elective officers, no person appointed to fill a vacancy shall hold his office by virtue of such appointment longer than the commencement of the political year next succeeding the first annual election after the happening of the vacancy." If this provision applies to aldermen in the city of New York, Messrs. Ferrand and Colne ceased to be aldermen at the beginning of the political year 1915, and aldermen should have been elected to succeed them at the general election in 1914. It is the claim of the relators that they themselves were so elected.

The respondents retort that section 5 of article X of the Constitution applies only to constitutional officers and that the New York aldermen are not such officers.

This brings us to the chief question discussed upon the appeal. Is a member of the board of aldermen of the city of New York a constitutional officer?

We think he is — and for reasons which can be briefly stated.

In the city of New York the power of apportioning the counties thereof into assembly districts is vested in "the common council, or if there be none, the body exercising the powers of a common council." (Const. art. III, § 5.) That the board of aldermen is the body exercising the powers of a common council cannot be doubted. The Greater New York charter provides: "The legislative power of the City of New York, except as otherwise herein provided, shall be vested in one house to be known and styled as the 'Board of Aldermen of the City of New York.'" (Laws of 1901, ch. 466, § 17.) In the absence of

boards of supervisors — and there are no such boards in the counties making up the city of New York — there *must* be a "body exercising the powers of a common council" to perform the mandate of the Constitution in respect to legislative apportionment. This function is one of supreme importance in the government of the state. Its importance is emphasized by the introduction into the Constitution itself of a provision for the judicial review thereof, requiring that "any court before which a cause may be pending involving an apportionment, shall give precedence thereto over all other causes and proceedings, and if said court be not in session it shall convene promptly for the disposition of the same." (Const. art. III, § 5.) The board of aldermen of the city of New York, thus being the body upon which the Constitution has devolved this most responsible duty, so far as assembly districts are concerned, is a constitutional body, so long as it remains vested with this power of apportionment, and the aldermen who constitute the board are necessarily constitutional officers. The fact that they may cease to be such if the legislature should transfer the powers of a common council from them to some other body does not affect the question before us. The aldermen are constitutional officers *now* and were constitutional officers when the vacancies occurred in the fifty-first and fifty-second aldermanic districts.

This conclusion is not in conflict with the decision in *Long* v. *Mayor, etc., of N. Y.* (81 N. Y. 425) to the effect that prior to 1874 the office of alderman in the city of New York was not created or in any manner regulated by the Constitution. The constitutional amendment of that year expressly provided for the division of New York county into assembly districts by the board of aldermen of the city. The language was: "and the board of supervisors in such counties as may be entitled under such apportionment to more than one member, except the city and county of New York, and in said city and county the board of

aldermen of said city shall assemble at such time as the
legislature, making such apportionment, shall prescribe,
and divide their respective counties into assembly dis-
tricts." (See Laws of 1874, page 926.) The imposition
of this duty upon the aldermen made them constitutional
officers so long as this provision of the fundamental law
remained unchanged, that is, until the adoption of the
present Constitution in 1894; and we have endeavored to
show that they are still constitutional officers under the
Constitution of 1894 because still empowered and required
to exercise the same function. No such power was vested
in the aldermen at the time to which the decision in the
*Long* case relates, and consequently what the court said
in reference to their status before the amendment of 1874
is not applicable to their status since or now. Nor has
the case of *Demarest* v. *Mayor, etc., of N. Y.* (74 N. Y.
161), upholding the validity of an act passed in 1873 abol-
ishing the board of assistant aldermen, any more bearing
on the present controversy; for at that time the existence
of neither board rested upon any constitutional sanction.

Inasmuch as in order to apportion the assembly districts
in New York city there *has to be* under the Constitution
a common council or body exercising the powers of a
common council, the members of such a body are neces-
sarily constitutional officers because the Constitution by
necessary implication requires such a body to exist. So
long, then, as the board of aldermen exercises the
powers of a common council so long will its members
be constitutional officers.

In *People ex rel. Hatfield* v. *Comstock* (78 N. Y. 356)
and *People ex rel. Ward* v. *Scheu* (167 N. Y. 292, 296) it
was held that the provision of the Constitution (Art. X,
§ 5) requiring that " in case of elective officers, no person
appointed to fill a vacancy shall hold his office by virtue
of such appointment longer than the commencement of
the political year next succeeding the first annual election
after the happening of the vacancy " applied only to con-

stitutional offices as distinguished from those created by the legislature; and in the second of these cases it is said that constitutional offices are "such offices as are created or made elective by the Constitution and not to such as are created and controlled by the legislature." We think that the constitutional offices to which this provision of the Constitution applies also embrace such as are required to be maintained in existence to fulfill the express mandate of the Constitution itself, and hence include the " body exercising the powers of a common council," which must be preserved, under whatever title, to apportion the assembly districts in the city of New York. That body at the present time is the board of aldermen.

It is enough that they are thus elective constitutional officers, and not essential that they should be declared to be elective by the express terms of the Constitution itself, to bring them within the scope and operation of the provision of section 5 of article X relative to the duration of the term of appointees to fill vacancies. Common councils have always been elective bodies up to the present time in this state, and this fact was within the cognizance of the framers of the Constitution. We agree with the learned counsel for the appellants that "they never intended to vest the power of apportionment of members of the legislature in a body that might be appointed or chosen in any other way than by election, a thing that would be without precedent in the constitutional history of this country, federal or state."

If the views which have thus far been expressed are correct it follows that the terms of Messrs. Ferrand and Colne, the gentlemen chosen by the board to fill the vacancies in the fifty-first and fifty-second aldermanic districts, expired at the beginning of the political year next succeeding the first annual election after the happening of the vacancies, to wit, on January 1, 1915; and an alderman should have been elected in each of those districts at the general election in 1914. Were the votes

15

in controversy in these proceedings properly and effec-
tively cast at that election so as to entitle the relators, as
a matter of legal right, to a peremptory writ of man-
damus commanding that they shall be duly canvassed?
It is to be observed that the order of the Special Term
directing the issuance of such writ directed that it issue
" as a matter of legal right and not in the exercise of dis-
cretion," and that the order of reversal by the Appellate
Division directed that " the order so appealed from be,
and the same is hereby reversed and motion for a peremp-
tory writ of mandamus denied as matter of law and not
in the exercise of discretion." Both courts treated the
question as one of strict legal right, the Special Term
holding that the right existed, the Appellate Division
that it did not. We are left entirely in the dark as to
what the action of either tribunal would have been if it
had felt at liberty to exercise its judicial discretion and
grant or withhold the writ according to its view of what
was just and proper under the circumstances. In that
event, it may well be doubted whether the remedy would
have been awarded in view of the somewhat startling
consequences; for by means of a few votes for persons
whose candidacy was a profound secret, to fill vacancies
wholly unknown to the electorate generally to exist and
of which no notice had ever been given to the public,
these hidden candidates would thereby practically estab-
lish their title to recognition as aldermen of the city of
New York, with a right to share in discharging the
important constitutional duty which has been discussed,
namely, the apportionment of assembly districts.

The case of *People ex rel. Goring* v. *Prest., etc., of
Wappingers Falls* (144 N. Y. 616) is relied upon as an
authority entitling the relators to the writ as a matter of
right. There the officials charged with the duty of pre-
paring the ballot omitted to print thereon the name of the
office of police justice of the village of Wappingers Falls
which was vacant and under the statute was to be filled

1915.]    ·    Opinion, per WILLARD BARTLETT, Ch. J.    [214 N. Y.]

at the election in question.   Notwithstanding the omission, forty-four persons voted for the relator for that office, their votes being all that were cast for police justice.   It was held that he was duly elected and the board of trustees of the village were compelled by mandamus to recognize him in his official capacity.   In that case the vacancy was evidently known to exist, certainly by a considerable number of voters of the village.   Here, however, not only were the vacancies not known to exist, but to realize their existence it was necessary for the voters to know that a provision of the Greater New York charter was unconstitutional; that is to say, the provision permitting an alderman chosen by the board to fill a vacancy to serve throughout the unexpired term of his predecessor instead of limiting the duration of his term to the beginning of the next political year.

As long as that provision stood upon the statute book unquestioned the election officers were not justly subject to criticism for treating it as valid.   The general assumption being that it was valid, on the part of the public as well as all officers charged with any duty concerning the election or notices thereof, we think it would be going too far to hold that *there was an election* to fill these · vacancies on the 3d day of November, 1914, simply by reason of the fact that some votes were cast on that day for the relators in their respective aldermanic districts. While it is true that there ought to have been an election to fill such vacancies, and that the omission may leave the districts without representation in the board of aldermen for a year, nevertheless it would be upholding a fiction to treat the occurrences upon which the relators rely as an election for the offices which they claim.   As was said by Judge FINCH in *People ex rel. Woods* v. *Crissey* (91 N. Y. 616) an election implies opportunity to reject or choose another.   The people had no such opportunity in the present case.   Everyone who participated in the election, except the relators and their friends who

voted for them, acted on the assumption that no alderman would be or lawfully could be voted for to fill the vacancies in question, because of the further assumption that there were no vacancies then existing. We think that this fact, based upon the assumed validity of a statutory provision which had never theretofore been questioned, deprived the proceeding of the character of an election to fill such vacancies.

In so holding we do not mean to imply that a citizen who claimed the right to vote for alderman in one of these districts last year might not have asserted that claim effectively. He could have demanded of the election authorities that they give the proper notices that an alderman was to be elected to fill the vacancy, basing his demand upon the unconstitutionality of the charter provision which has been discussed; and if they declined he could have tested its validity in court in advance of election day, so that the people would have had a real opportunity to participate in the choice of the alderman, if the decision was in his favor, instead of only an imaginary one. Under the actual circumstances, the public had no knowledge whatever that anybody thought of electing aldermen in these districts at this time. Here there was no more an election for aldermen than there was in *People ex rel. Wood* v. *Crissey (supra)*, and for reasons similar to those which influenced the action of this court in that case we do not think it right to recognize it.

It is proper to add, however, that although the votes for alderman were not entitled to be canvassed, we do not mean that a ballot was invalidated so far as other officers were concerned by reason of having the name of a candidate for alderman written thereon. It was merely noneffectual as a vote for alderman because there was in fact no election such as there ought to have been for alderman.

Our conclusions may be summarily stated as follows:

(1) The New York city aldermen are constitutional

officers, elective when the Constitution was adopted and elective now — and so long as they are both constitutional and elective they fall within the purview of section 5 of article X, and no vacancy in the office can be filled for a longer period than the interval between the occurrence of the vacancy and the beginning of the next political year.

(2) There was no election to fill the vacancies in the office of alderman in the fifty-first and fifty-second aldermanic districts of the city of New York in 1914, and hence the votes cast for the relators respectively as candidates for such office should not be canvassed.

SEABURY, J. (concurring).  I concur in the view that the order should be affirmed.   The chief question presented for determination is whether section 18 of the Greater New York charter is constitutional.   It is claimed to be unconstitutional upon the ground that the office of alderman of the city of New York is a constitutional office and governed by section 5 of article X of the Constitution.   This provision of the Constitution is as follows: "The legislature shall provide for filling vacancies in office, and in case of elective officers, no person appointed to fill a vacancy shall hold his office by virtue of such appointment longer than the commencement of the political year next succeeding the first annual election after the happening of the vacancy." It is clear that this provision applies only to a constitutional and not to a statutory officer (*People ex rel. Hatfield* v. *Comstock*, 78 N. Y. 356; *People ex rel. Ward* v. *Scheu*, 167 N. Y. 292; *Matter of Schultes*, 33 App. Div. 524), and, therefore, it is necessary to determine whether the office of alderman of the city of New York is a constitutional office.   The contention that the board of aldermen is a constitutional body rests entirely upon sections 5 and 26 of article III of the Constitution.   Section 5 of that article provides that the apportionment of assembly districts in a county entitled to more than one member must

be made by the board of supervisors and in any city embracing an entire county and having no board of supervisors, the common council shall make the apportionment. Section 26 of this article of the Constitution provides as follows: "There shall be in each county, except in a county wholly included in a city, a board of supervisors, to be composed of such members and elected in such manner and for such period as is or may be provided by law. In a city which includes an entire county, or two or more entire counties, the powers and duties of a board of supervisors may be devolved upon the municipal assembly, common council, board of aldermen or other legislative body of the city." That the legislature has complete and absolute power to deprive the board of aldermen of all its functions and powers, other than the right to apportion the counties included in the city into assembly districts, is settled by the decisions of this court. (*Long* v. *Mayor, etc., of N. Y.,* 81 N. Y. 425; *Wilcox* v. *McClellan,* 185 N. Y. 9.) The Constitution doubtless requires that there shall be, in every municipality including one or more counties, some local legislative body that shall be capable of performing the function of apportioning the county into assembly districts. When such a local legislative body exists, there is in existence a body capable of performing this constitutional function. The fact that the function to be performed is enjoined by the Constitution does not establish that the person or body who performs such a function is a constitutional officer. (*Koch* v. *Mayor, etc., of N. Y.,* 152 N. Y. 72.) Unless there is in the Constitution some prohibition against or limitation upon the power of the legislature, the legislature may determine what this local legislative body shall be, and in what manner it shall be elected or appointed. The fact that the Constitution recognizes the existence of such a body is not equivalent to establishing it as a constitutional body, and the fact that it is so recogized does not prevent its abolition by the legislature, provided that

there shall be some local legislative body which shall
have power to apportion the counties into assembly dis-
tricts.   Thus there is no prohibition in the Constitution,
express or implied, which precludes the legislature from
abolishing the board of aldermen of the city of New York
and devolving its duties upon the board of estimate and
apportionment of that city.   The board of estimate and
apportionment would then be a local legislative body,
even to a greater extent than it now is and upon it
would devolve the duty of apportioning the several coun-
ties included within the city of New York into assembly
districts, when it should become necessary to make such
an apportionment.   It will not I think be questioned
that if the legislature abolished the board of aldermen
and conferred its power upon the board of estimate and
apportionment, that act would be a constitutional exer-
cise of power.   The board of aldermen perform a func-
tion which must, in conformity to the Constitution, be
performed by some local legislative body, but it is not on
that account established by the Constitution.   The fact,
if it be a fact, that for a long period in our history, local
legislative bodies charged with the duty of apportion-
ment have been elective, does not establish that they are
constitutional officers.   If it be true, as asserted by one
of the learned counsel for the appellants, that if these
officials were not elected it would be " a thing that would
be without precedent in the constitutional history of this
country," that would of course of itself furnish a very
strong reason why the legislature should continue to pro-
vide that they should be selected in this manner but it
would not prevent the legislature from making different
provisions for the manner in which they should be chosen,
if in its judgment a different method should be adopted.
In this connection it is interesting to notice that under
the Constitution of 1846 the whole matter of apportion-
ment was legislative.   (*Rumsey* v. *People,* 19 N. Y. 41, 47.)
There was no restriction upon the legislature as to the

manner in which it should make the apportionment. As was said in *Rumsey* v. *People* (*supra*): "It is left to the legislative bodies to ascertain the population in the best way they can." It is true that many of the duties performed by boards of supervisors in counties outside of the city of New York and formerly performed by such boards of supervisors in some of the counties now within the city of New York, have been devolved upon the board of aldermen of the city of New York. (Section 1586 of Greater New York charter.) Neither this fact, nor the fact that the Constitution (Article III, section 26) provides for the establishment of boards of supervisors outside of New York city, indicate that the members of the board of aldermen of the city of New York are constitutional officers. The constitutional provision (Article III, section 26) requires that "there shall be in each county, *except in a county wholly included in a city*, a board of supervisors." Each of the counties within the city of New York is wholly included in a city and, therefore, there is plainly no constitutional requirement for the establishment of a board of supervisors in the city of New York. In reference to a city which includes an entire county, or two or more entire counties, there is a very different provision in the Constitution. In that case it is provided that "the powers and duties of a board of supervisors may be devolved upon the municipal assembly, common council, board of aldermen or other legislative body of the city." The purpose of this differentiation, it seems to me, was to establish as to counties not included in a city a fixed, rigid and constitutional body exercising the powers of local government, whereas in cities which included an entire county or two or more entire counties the powers and duties of a board of supervisors "may be devolved" upon the local legislative body. This differentiation, in my opinion, was designed to accomplish something more than merely a change in the name of the local legislative

body.   It did not establish as to counties wholly within
a city any fixed, rigid and constitutional body, but left
the matter of local government free for legislative action
provided only that *some* local legislative body should be
established.    That the Constitution requires the existence
of *some* local legislative body is apparent from the section
just referred to (Article III, section 26), and the provision
of the Constitution which imposes upon such local legis-
lative body the duty of apportioning the counties wholly
within the city into assembly districts.   (Article III, sec-
tion 5.)   Further than this the provisions of the Constitu-
tion do not go, and outside the field of constitutional
restriction and prohibition lies the broad sphere of legis-
lative power.   We cannot assume that those who framed
the Constitution were unconscious of the reasons for pre-
scribing constitutional requirements for the government
of counties outside of a city which would not be appli-
cable to a county wholly within a city.   The application
of such constitutional restrictions to a county or counties
wholly included within a city might result in the unneces-
sary duplication of public offices and serve to hamper the
legislature in the granting of charters which it might see
fit to confer upon such municipalities.   The distinction
which the Constitution makes in this respect between
counties not included within a city and counties wholly
included within a city seems to be indicative of an intent
to leave the legislative authority unhampered, in grant-
ing the. charters which it might see fit to confer upon
municipalities.    Experience shows that improvements
are constantly being made in the methods of municipal
governments, and that of late years a tendency has become
manifest to vest the legislative power of municipalities
in small representative bodies.   It has been believed
that this tendency results in more responsible and effi-
cient local government than exists when the local legisla-
tive authority is vested in large boards of supervisors
or boards of aldermen.   The provisions of the charter of

the city of New York extending the power of the board of estimate and apportionment of that city is an example of this tendency to which I have referred. All this was recognized and commented upon by this court in *Wilcox v. McClellan* (185 N. Y. 9), where it upheld the constitutionality of an act of the legislature transferring the power to consent to the granting of franchises, from the board of aldermen to the board of estimate and apportionment. In that case Judge O'Brien said: "There can be no doubt that the legislature had the power to repeal the charter in so far as it conferred power upon the board of aldermen to grant franchises. The authority that conferred the power could abolish it or take it away. It makes no difference that this power was exercised by the legislature before the official terms for which the aldermen were elected had expired, since that body had no vested right to the continuance of any of the public powers or duties conferred upon them by the charter. Having abolished or greatly limited the powers of the aldermen with respect to the granting of franchises, the legislature was not compelled to leave this power in abeyance, but might confer it upon any other local authority authorized by the Constitution." (p. 16.) There is no doubt that the board of aldermen are not *eo nomine* established by the Constitution. They are recognized in, not established by it, and are not beyond the reach of the legislature. If the legislature may abolish the board of aldermen, it may, it seems to me, prescribe the manner in which vacancies in its membership may be filled. This power is not diminished because the board of aldermen may incidentally perform the function of apportionment. In the absence of some constitutional provision which provides that the local body charged with the duty of apportionment shall be elected, there seems to me to be no ground for declaring section 18 of the Greater New York charter unconstitutional. The Constitution will be searched in vain for any provision requiring that the

members of the board of aldermen shall be elected.   On the contrary, article X, section 2, of the Constitution provides that all officers whose election or appointment is not provided for in the Constitution shall be elected or appointed " as the legislature may direct."   To hold that the members of this board are necessarily to be elected we must disregard this provision of the Constitution and look outside of the Constitution and find in the practice under which such officials have been elected a prohibition upon the legislative power.   The test of constitutionality must be found in the Constitution and not in an indefinite practice or course of conduct which is not prescribed by the Constitution.

I conclude, therefore, that the offices which the members of the board of aldermen hold are statutory and not constitutional offices and that, therefore, section 18 of the Greater New York charter does not offend against any provision of the Constitution.

For these reasons I vote in favor of affirming the order appealed from.

HISCOCK, CUDDEBACK and HOGAN, JJ., concur with WILLARD BARTLETT, Ch. J.; CARDOZO, J., concurs in opinion of WILLARD BARTLETT, Ch. J., in so far as it holds that what happened in November, 1914, was not an election, and concurs in result as to the other matter discussed; SEABURY, J., reads for affirmance on the ground that section 18 of the Greater New York charter is constitutional, and COLLIN, J., concurs with him.

Order in each case affirmed, with costs.