WILLIAM JAY SCHIEFFELIN, Appellant, v. FREDERICK E. GOLD-SMITH and Others, Respondents.*

First Department, November 12, 1929.

*Leonard M. Wallstein* of counsel [*Ralph M. Frink* with him on the brief; *Leonard M. Wallstein,* attorney] for the appellant.

*Edward S. Dore* of counsel [*Aron Steuer* with him on the brief; *Edward S. Dore,* attorney] for the respondents Frederick E. Goldsmith and Joseph A. Fontanelli.

*William E. C. Mayer* of counsel [*J. Joseph Lilly* with him on the brief; *Arthur J. W. Hilly, Corporation Counsel*], for the respondent Charles W. Berry, comptroller of the city of New York.

MARTIN, J. The plaintiff, a taxpayer, brings this action, pursuant to section 51 of the General Municinal Law, to restrain the comptroller from paying to the defendants Goldsmith and Fontanelli any city money as salary as justices of the Municipal Court, appointed pursuant to the provisions of chapter 430 of the Laws of 1929, which added a new section known as section 4-a to the New York City Municipal Court Code (Laws of 1915, chap. 279). The basis for this action, as stated in the complaint, is that the act violates the Constitution of the State of New York and is void and of no effect, and that any acts of the comptroller in paying such salary will be illegal official acts, and a waste of the property, funds and estate of the city of New York.

The appellant contends that chapter 430 of the Laws of 1929 is clearly unconstitutional in its requirement of membership in a

certain political party. The provision referred to reads as follows: "Any temporary justice appointed pursuant to the provisions of this section shall be a member of the same political party as the justice to whose office he has been appointed."

It is also appellant's contention that this law violates the Constitution in that it restricts the appointing power of the local authorities to the selection of a member of a certain political party.

The Constitution in effect forbids a requirement of political party membership as a qualification for such appointment. It provides (Art. 1, § 1) that "No member of this State shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land, or the judgment of his peers." Article 13, section 1, entitled "Oath of Office," after setting forth the form of oath, provides: "And no other oath, declaration or test shall be required as a qualification for any office of public trust."

The question whether these provisions of the Constitution are violated by requiring political party membership as a qualification for appointment to public office was fully considered in *Rathbone* v. *Wirth* (6 App. Div. 277; affd., 150 N. Y. 459). In that case a statute (Laws of 1896, chap. 427) had been enacted creating a board of four police commissioners for the city of Albany, and providing that "No person is eligible to the office of police commissioner unless at the time of his election he is a member of the political party or organization having the highest or the next highest representation in the common council." The court held that the requirement of membership in a political party as a qualification for public office rendered the statute unconstitutional.

Judge O'BRIEN, writing for the Court of Appeals in that case, said: "The Legislature of this State has no power to enact a law which proscribes any class of citizens as ineligible to hold public office on account of political belief or party affiliations, and, consequently, the last clause of the section of the bill in question violates the provisions of the Constitution referred to and is void."

Judge BARTLETT, in a separate opinion, said: "The effect of this provision is to exclude from eligibility all persons who do not belong to one or the other of the great political parties of the country. This is the practical disfranchisement of a numerous class of citizens and violates the Constitut on."

This statute not only requires that the appointed justice be a member of a certain political party but it restricts the mayor to the selection of a member of one political party. This restriction on the appointive power is sufficient to render the statute unconstitutional. (*Rathbone* v. *Wirth, supra.*)

By chapter 430 of the Laws of 1929 power is given to the mayor and the president-justice selected by the mayor* to at least temporarily remove a justice of the Municipal Court. The removal of a Municipal Court justice may be accomplished only in the manner provided by law.

Article 6, section 17, of the Constitution reads in part as follows: " Justices of the peace, justices of the Municipal Court of the City of New York, and judges or justices of inferior courts not of record, and their clerks, may be removed for cause, after due notice and an opportunity of being heard, by such courts as are or may be prescribed by law."

The Appellate Division of the Supreme Court has been given authority and jurisdiction under the Constitution of the State to entertain and dispose of charges presented against a justice of the Municipal Court of the City of New York in a proceeding to remove him from office, and the Legislature is without power to deprive said court of such jurisdiction. (*Matter of Levy*, 192 App. Div. 550; Code Crim. Proc. § 132.) The effect of chapter 430 of the Laws of 1929 is to provide for the removal of Municipal Court justices without notice and without a hearing and not by a court, but by the president-justice and mayor.

As pointed out by the appellant, suppose for example the mayor and his appointee, the president-justice, desire to have a certain justice of the Municipal Court removed, it would be a very simple expedient to urge his poor health as a pretext for his removal. No such power should be given to either the president-justice or the mayor. The consent of the justice or an examination and report from some board or body should be required before a justice should be compelled to relinquish the duties of his office because of disability.

Although it may be argued that the appointment of a temporary justice is for thirty days only, there is nothing to prevent a renewal of the appointment at the end of that time and thus continue such appointment indefinitely. Where such appointments have been allowed as proper, experience has shown that such a course is possible.

In *People ex rel. Burby* v. *Howland* (155 N. Y. 270) the court said: " Not only is the office itself placed beyond the reach of hostile legislation, but also the term thereof, the method of filling it, and, by implication, the method of removing an incumbent. As was well said by the learned Appellate Division in deciding this case, ' when the Constitution has fixed the term of office and prescribed the cause for which and the method by which an incumbent of such

*See N. Y. City Mun. Ct. Code, §§ 1, 7, as amd. by Laws of 1928, chap. 614.
— [REP.

office may be removed, such cause and method are exclusive, and it is beyond the power of the Legislature to remove or suspend him from office for any other cause or in any other method.' "

The statute under consideration provides that the president-justice shall make a certificate setting forth the disability of the Municipal Court justice and that the public interest requires a temporary appointment in the place of a justice thus disabled. By this act the president-justice is given the arbitrary power, despite the objection of the elected justice, to say that such justice is temporarily disabled, and temporarily to remove him, by certifying that the public interest requires a temporary appointee to take his place. Such a course disregards the procedure which must be followed for the removal of a Municipal Court justice.

It is beyond the power of the Legislature thus to provide for the removal without cause of a justice who has been elected, before his term of office has expired, or even to replace him temporarily and select another to perform the duties of his office. (*People ex rel. Burby* v. *Howland, supra.*)

The Constitution requires that all Municipal Court justices be either elected or appointed, forbidding that they be partly elected and partly appointed. (Const. art. 6, § 17.) In obedience to the constitutional mandate, the Legislature has provided that all justices of the Municipal Court be elected.

This question was before the court in *People* v. *Dooley* (171 N. Y. 74). There the court said: " Assuming that this section of the Constitution applies to the case at bar, we see no escape from the conclusion that the charter amendment of 1901 is unconstitutional. The mandate of the Constitution is that judicial officers in cities, whose election or appointment is not otherwise provided for, shall be chosen by the electors of such cities or appointed by some local authorities thereof. This language is plain and unequivocal. It presents two distinct alternatives. Either may be chosen. It must be one or the other. If the office is to be filled by appointment, the agency by which this is to be accomplished is broadly, yet clearly designated. If the officer is to be elected, the power of appointment is as plainly excluded. If this is not the fair and reasonable construction of this provision of the Constitution then it is within the power of the Legislature to authorize the employment of both methods at the same time, in the same territorial or civil division, or in different divisions, either to suit the caprice of a day or the exigencies of a political condition. If judicial officers of the same grade, performing the same duties in the same local division, may be appointed in part and elected in part at the same time, we shall not have long to wait for such use of the power as will serve

the selfish ends of the designing few at the expense of the public weal."

Although the law requires that justices of the Municipal Court must be elected in a certain district and are entitled to act as such justices for the term elected, this statute permits the president-justice to deprive elected justices of the rights given by such election. The rule has been to have a fixed and definite term of office. That fixed and definite term of office for Municipal Court justices has been provided for by statute. Having been fixed by statute, it is not within the power of the Legislature to interfere therewith in the manner set forth in the statute known as chapter 430 of the Laws of 1929. We are, therefore, of opinion that the provision which gives any such power to the president-justice or mayor violates the provisions of the Constitution.

The order appealed from should, therefore, be reversed, with ten dollars costs and disbursements, and the motion granted.

DOWLING, P. J., and O'MALLEY, J., concur; FINCH and McAVOY, JJ., dissent.

FINCH, J. (dissenting). I am unable to see why chapter 430 of the Laws of 1929 should be held unconstitutional. In any event, the last sentence, requiring the temporary justice to be of the same political complexion as the justice whose place he is taking for the the thirty-day temporary appointment, may be severed and the rest of the statute sustained, as pointed out in the opinion of Mr. Justice McAVOY. In addition, it would seem to me that the provision requiring the temporary incumbent to be of the same political party as the duly elected justice has as its basis the reasonable requirement that the court shall be safeguarded from politics as much as possible and the will of the electorate preserved as far as practical during the interim. Thus is removed the temptation to play politics with the courts under the guise of providing a temporary justice.

No one disputes that the choice of original appointment to office cannot be arbitrarily limited to the members of a political party, as in Rathbone v. Wirth (150 N. Y. 459), for there an original appointment was involved and no one was eligible unless he first was able to become a member of one of two political parties. The choice was thus restricted by an arbitrary limitation and one having no reasonable basis in harmony with our conception of the liberty to be accorded to the individual. But that is not this case. Here, on the contrary, we have a public official chosen by the electorate from any party, and a temporary incumbent to fill a vacancy. In such a case it has always been held reasonable

to require that the *ad interim* official shall be of the same political faith as the duly elected official. (*People ex rel. Deitz* v. *Hogan,* 214 N. Y. 216.) The will of the electorate is thereby not changed more than is necessary to meet the exigency arising from the vacancy.

In *People ex rel. Deitz* v. *Hogan* (*supra*) it was assumed that a provision relating to a vacancy similar to that in the case at bar was constitutional, which provision was as follows: " Any vacancy which may occur among the members elected to the board of aldermen shall be filled by election by a majority of all the members elected thereto, of a person who must be of the same political party as the member whose place has become vacant;   *   *   *." (Greater New York Charter [Laws of 1901, chap. 466], § 18, as amd. by Laws of 1912, chap. 131.)*

The disability in the case at bar is not of the inevitable character of a vacancy created by death, and hence there is more need for proper safeguards. Also the disability here is real and must be provided for by legislation. The safeguards with which the Legislature has surrounded these provisions have a sufficient basis in reason so as to bring them within the sphere comprised within the judgment of the Legislature, and hence the courts should not declare the statute unconstitutional.

I, therefore, am of the opinion that the act is constitutional and that the order appealed from should be affirmed.

McAvoy, J. (dissenting). The question presented here is whether chapter 430 of the Laws of 1929, entitled " An Act to amend the New York City Municipal Court Code, in relation to temporary appointments of justices," is in conflict with the Constitution of the State of New York.

The act, in effect, provides for the temporary appointment for a period not exceeding thirty days of a " temporary justice " in the place of a justice who has been certified by the president-justice of the court to be disabled. A provision of the amendment requires that the " temporary justice " so appointed " shall be a member of the same political party as the justice to whose office he has been appointed."

This provision — the main basis of attack — is said to violate two sections of the Constitution, to wit, article 1, section 1, and article 13, section 1, in that it imposes, as a condition for appointment to this office, a requirement forbidden by the Constitution, and also restricts the appointing power of the local authorities to the selection of a member of a certain political party, contrary to the provisions of the Constitution (Art. 6, § 17).

---

* Since amd. by Laws of 1923, chap. 667.— [Rep.

The constitutional provisions involved in the main question are (1) the one requiring that "no member of this State shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land, or the judgment of his peers;" and (2) that provision headed "Oath of Office," which reads "and no other oath, declaration or test shall be required as a qualification for any office of public trust." (Const. art. 1, § 1; Id. art. 13, § 1.)

It was held below (and authority seems to confirm the view) that the provisions in the last sentence of the amendment requiring the appointment of a person of the same political party as the justice to whose office another is appointed, violates the second of these provisions of the Constitution. But it remains to be considered whether the elements of the act in question which are invalid constitute so material a part of the scheme embodied in it that the whole act must fail. If it could be considered that the Legislature would never have provided for these temporary appointees, unless it also hedged the appointment around with a political qualification, then the act would fail, since that portion would so permeate the whole structure of the enactment as to render it totally invalid.

Having in view the rule that the legislative power is unlimited, except as restrained by the Constitution, and that every act of the Legislature is presumed to be in harmony with the Constitution, unless the contrary clearly appears, and that if two constructions be permissible, then the one making the act valid must be adopted, it does not seem to me that we need hold that the final sentence of the section is a necessary part of the legislative enactment, and expresses the legislative intent only if its presence is continued. We may adopt a construction which will uphold the evident intention of the Legislature, which is, in its essence, to provide for emergencies occurring in the districts of the Municipal Court.

The Legislature, in the case of inferior local courts of civil or criminal jurisdiction, has plenary power to establish, regulate or discontinue such courts; and it would seem that, if it has been given this power, as expressed in the Constitution (Art. 6, § 18), it must have the power to provide, in the public interest, for a continuance of the functioning of inferior local courts with temporarily appointed justices to sit in the place of disabled justices.

This statute, when reasonably construed, does not displace the elective justice from the particular office which he holds by the appointment of a temporary justice, since the permanent justice is still left in the office to which he was elected. There is no power of removal or suspension conferred, and no authority to displace

the elected incumbent. These temporary appointees are under the statute itself new and additional justices; and the plenary power granted to regulate or discontinue the court surely includes the power to provide for temporary appointments for periodic intervals. An election of such temporary justices is not an expedient mode in the nature of the emergent contingency. No apprehension need be felt, as indicated in the prevailing opinion, that elected justices may be displaced on a certificate of disability from their office. The method of certifying disability is a matter for the legislative control; and, if a certificate of a medical board of disability ought to be required, before the president-justice is qualified to determine the disability of a justice, then such regulation is a provision with which the Legislature is concerned, and over which the courts have no control. It is not reasonably to be presumed that a justice, able to act, will sit idly by while he is temporarily displaced by the erroneous certificate of the president-justice and the action of the mayor. The decision as to one's ability to continue judicial duties must be subject to some control, and that control is vested by the Legislature in his superior judicial officer, who has, presumably, means of determining the question.

The objections to the statute, therefore, that the unconstitutional portion is not severable and, therefore, invalidates the whole statute; that the method of selecting the justices is unauthorized; that the section provides for an unconstitutional removal or suspension of Municipal Court justices, and that it is inval d because it violates the constitutional system of a judicial term of office, recognized under article 6, sections 17 and 19, of the Constitution, are not found to have sufficient validity to overturn the solemn act of the Legislature. " Only when required by the most cogent reasons, nor, indeed, unless compelled by unanswerable grounds, will a court declare a statute to be unconstitutional." (*People* v. *Budd*, 117 N. Y. 1, pp. 13, 14.)

The question is merely one of power — and nothing else. We cannot attribute improper motives to the Legislature, any more than it is proper for the Legislature to attribute improper motives to the courts for judicial action. The motive and purpose of the enactment here was not only legal, but a necessary exercise of the legislative power in the interests of a speedy administration of justice in this court where the disability of a justice might hamper the conduct of the judicial business.

I, therefore, vote for affirmance of the order appealed from.

Order reversed, with ten dollars costs and disbursements, and motion granted. Settle order on notice.