Benjamin Wm. Mehlman, J.
These are prosecutions for violations of article II, section 4 of the Ordinances of the Village of Ocean Beach, adopted September 23,1967, which states: “ Section 4. Signs within the Inc. Village of Ocean Beach shall not be illuminated and shall be limited in size to 1 square foot in area, including signs utilized for advertising the sale or rental of property which may be placed only on property advertised for sale or rental. This size limitation shall not apply to existing commercial or business uses for which the signs may not exceed four square feet in area and may be placed only on the property on which the commercial or business use occurs. Nonconforming signs may continue such nonconformity until they are destroyed, structurally altered, reconstructed, changed, or moved, but the period of such nonconformity may not exceed 2 years from the date of the enactment of this ordinance. ’ ’
Essentially the defendants’ contentions are these: (1) the ordinance is unconstitutional because no public benefit has been shown; (2) the ordinance deprives the owners of a property right in the signs; (3) there is no proof that the individual defendants owned or maintained the signs in question; and (4) the ordinance is discriminatory.
The three cases were tried together. At the trial each of the defendants conceded that on the date alleged in each information each of the respective properties had a sign or signs on top of, above, or on the roof, which exceeded four square feet in area and that some were illuminated. Defendant McG-ann conceded the existence of three illuminated signs on the side of the building and defendant Holier conceded an illuminated sign is in the window of the premises.
There is no question of proper, procedural enactment of the ordinance. Proofs of notice, public hearing and publication were not disputed.
Subdivision 47 of section 89 of the Village Law authorizes a village to regulate and control the erection, construction and use in, upon and near streets and other public places of billboards and other advertising media. Subdivision 59 of that section permits a village to enact ordinances, not inconsistent with existing law, which shall be deemed expedient or desirable *1089 for the good government of the village and other purposes within its police power.
The ordinance having been properly enacted both procedurally and pursuant to statutory authority, there is a presumption of its legality and constitutionality (People v. Pagnotta, 25 N Y 2d 333, 337; Matter of Van Berkel v. Power, 16 N Y 2d 37, 40; Shepard v. Village of Skaneateles, 300 N. Y. 115) with which this court should not readily interfere. “ The courts have frequently reiterated the rule that local authorities entrusted with the regulation of such matters and not the courts are primarily the judges of the necessities of local situations and the courts may only interfere with laws or ordinances passed or regulations adopted in pursuance of the police power where they are so arbitrary as to be palpably and unmistakenly in excess of any reasonable exercise of the authority conferred ”. (Boord v. Wallander, 195 Misc. 557, 559, mod. 227 App. Div. 253, affd. 302 N. Y. 890). Thus the defendants’ basic contentions will be considered.
PUBLIC BENEFIT-POWER TO ENACT THE ORDINANCE
In 1963 the Court of Appeals established the rule that, no matter what the law had been previously, aesthetic considerations may be taken into account by the legislative body in enacting laws. Judge, now Chief Judge Fuld, stated: “ Once it be conceded that aesthetics is a valid subject of legislative concern, the conclusion seems unescapable that reasonable legislation designed to promote that end is a valid and permissible exercise of the police power. * * * And, indeed, this view finds support in an ever-increasing number of cases from other jurisdictions which recognize that aesthetic considerations alone may warrant an exercise of the police power. [Citing cases.] ” (People v. Stover, 12 N Y 2d 462, 467).
A number of decisions have specifically upheld ordinances regulating the use of signs. Most persuasive is Village of Larchmont v. Sutton (30 Misc 2d 245). The ordinance there provides that in residential districts no signs may be maintained except those customarily incident to churches, libraries or public museums, municipal buildings and parks and playgrounds, and professional name plates or owners’ name signs not exceeding one square foot in area. In retail business districts signs may be maintained only on the face of the building. Nonconforming signs existing at the time of adoption of the ordinance were to be removed as of a date 15 months after its effective date.
*1090 Mr. Justice Hopkins, after reviewing the provisions of the Village Law empowering a village to regulate the erection and use of signs, concluded that the Legislature’s delegation of those powers authorized the "adoption of the ’ ordinance, that the ordinance was valid, the owners of the signs had no vested rights therein, and that the 15 months’ period for removal or change was a reasonable regulation. (Cf. Matter of Harbison v. City of Buffalo, 4 N Y 2d 553, 562.)
Similar conclusions were reached in Village of Larchmont v. Levine (225 N. Y. S. 2d 452) where the ordinance provided that signs may be placed only on the front or face of a building in a retail business zone. A two-year period was established for the removal of nonconforming signs.
The court there held that aestheticism may be properly considered in enacting sign controls.
A village can provide a sufficient period of nonconformity at the end of which the use must cease. (Matter of Harbison v. City of Buffalo, 4 N Y 2d 553, 562.) In Village of Larchmont v. Sutton (supra), 15 months were held to be a reasonable period. Accordingly, the two years’ period of the instant ordinance is held to be reasonable and the ordinance therefore is a proper exercise of the police power enacted for a public benefit.
There is another factor which justifies the enactment of the ordinance. The Village of Ocean Beach is within the territorial limits of the Fire Island National Seashore created by act of Congress (Public Law 88-587, 88th Cong., S. 1365, Sept. 11, 1964 ; 78 U. S. Stat. 928). Subdivision (a) of section 3 of that act empowers the Secretary of the Interior to issue regulations for zoning ordinances and to approve any zoning ordinance or any amendment to any approved zoning ordinance submitted to him that conforms to the standards' contained in the regulations in effect at the time of the adoption of the ordinance or amendment.
Regulations were issued by the Secretary, which define the developed areas district of the National Seashore. (Code of Fed. Reg., tit. 36, § 28.4, subds. [a], [b].) The Village of Ocean Beach is expressly included in this district. Subdivision (e) of section 28.4 limits signs in this district, and its language is almost identical with the ordinance involved in these cases, which was enacted to comply with that regulation.
But irrespective of that regulation, the ordinance was validly enacted as a public benefit pursuant to the village’s police power.
*1091 VESTED EIGHTS
Defendants claim vested rights in the signs because they were erected and have been maintained for many years prior to the enactment of the ordinance. The signs concededly were nonconforming signs for over three years after the enactment of the ordinance, beyond the two-year period for change or removal. As stated above the two-year period is a reasonable regulation. In Matter of Harbison v. City of Buffalo (4 N Y 2d 553, 562, supra), it was said: “ If, therefore, a zoning ordinance provides a sufficient period of permitted nonconformity, it may further provide that at the end of such period the use must cease * * * We cannot say that a legislative body may not in any case, after consideration of the factors involved, conclude that the termination of a use after a period of time sufficient to allow a property owner an opportunity to amortize his investment and make other plans is a valid method of solving the problem. ”
None of - the defendants testified as to the cost of the signs. They stated that the signs were not carried as separate assets on their books and were not depreciated by them. It appears, therefore, that these signs do not represent substantial investments. They may have an intangible value in advertising the defendants’ businesses or properties, but no evidence of their intrinsic value was offered.
Defendants estimated the loss of profits they expect to sustain if their signs must comply with the ordinance. By its very nature their testimony in this regard is inconclusive and speculative.
The estimates of losses of business varied from 15% to 75%, based on surveys made by them, which consisted merely of talks with customers, but no evidence of the number of customers consulted or the periods of the surveys was offered. Only defendant McG-ann said he kept any records of his survey and those were made in 1969 and they were not produced. This testimony failed to sustain proof of damage even if that were an element in these cases.
There is nothing in this record to show that the signs in question represent substantial, unamortized investments or that limiting their size will have the effect of putting the defendants’ establishments out of business. In the cases cited in defendants’ memorandum, the respective ordinances would result in the destruction of the businesses. That has not been proven here.
This ordinance does not prohibit the maintenance of the signs; it merely regulates their size and means of display. While that may be deemed burdensome by the defendants, they have shown *1092 no vested rights which forbid the application of the ordinance to them.
RESPONSIBILITY OF THE INDIVIDUAL DEFENDANTS
Defendants contend that there is no proof that they, individually, owned or maintained the signs in question, but that the signs are owned and maintained by corporations.
This contention is without merit. Defendant Roller conceded that he owns all the stock in Roller’s Bay view, Incorporated, and actively participates in the policy and management of the restaurant. Defendant McG-ann is a stockholder of Maguire’s Bay Front Restaurant, Inc., the owner of the restaurant, he has knowledge of its operations, and is a partner of Seafields Investing Company which presently owns the building and sign.
Defendant Patterson is a stockholder and president of Artrol Corporation which owns the restaurant, and which is named as a defendant in the information.
Section 20.25 of the Penal Law makes a person criminally liable for conduct constituting an offense which he performs or causes to be performed in the name of or in behalf of a corporation to the same extent as if such conduct were performed in his own name or behalf. Corporate officers or agents may be criminally liable for their own acts although performed in their official capacity as such officers or agents. (People v. Alrich Rest. Corp., 53 Misc 2d 574, 575; People v. Matherson, 64 Misc 2d 680.)
DISCRIMINATORY EFFECT OF THE ORDINANCE
Defendants further contend that the ordinance is discriminatory because there are other noncomplying signs in the village and that the village itself maintains signs larger than the limitations of the ordinance. As to the first point, violations by others are not a defense in law; the violators can also be prosecuted and, indeed, others have been.
As for the village’s signs, defendants offered to prove the existence of an identifying sign on the water tower, police signs as to compliance with ordinances, and the permitted or prohibited uses of the walks and beach, and street identification markers. The court will take judicial notice that these signs are maintained by the village in the performance of its governmental functions. In that case, the village is not subject to the restrictions of its own ordinance. (Nehrbas v. Incorporated Vil. of Lloyd Harbor, 2 N Y 2d 190, 193.)
Accordingly, each of the defendants is found guilty as charged.